Jeffrey LOYD, Bruce Capshaw, et al., Plaintiffs-Appellants,

v.

ALABAMA DEPARTMENT OF CORRECTIONS, Michael Haley, Commissioner, Defendants-Cross-Defendants-Appellees,

Lyle Haas, Administrator of the Jackson County Department of Health in his official capacity, Defendant-Appellee,

J.D. Atkins, Jackson County Commissioner;  et al., Defendants-Appellees.

No. 98-6189.

United States Court of Appeals,

Eleventh Circuit.

May 26, 1999.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV92-N-0058-NE), Edwin Nelson, Judge.

Before BIRCH and BARKETT, Circuit Judges, and ALAIMO[*], Senior District Judge.

BIRCH, Circuit Judge:

Appellants, representing all prisoners who are or will be confined at the Jackson County Jail in Scottsboro, Alabama, appeal the district court order terminating:  (1) a 1994 consent decree governing the conditions of confinement at the Jackson County Jail, (2) a 1995 permanent injunction ordering the state to remove state inmates from the Jackson County Jail in a timely manner, and (3) a 1995 consent decree governing the responsibilities of the state of Alabama in removing state prisoners from Jackson County jails.

I. BACKGROUND

On November 7, 1994, the district court entered an order approving and adopting a consent decree concerning the conditions of confinement at the Jackson County Jail. The parties to that consent decree included the appellants, Jackson County, the Jackson County Commissioners, the Jackson County Sheriff, and the Chief Jailor of the Jackson County Jail. On January 12, 1995, the district court entered a permanent

[*]Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

injunction against the Alabama Department of Corrections, ordering the timely removal of state prisoners from the Jackson County Jail. On March 17, 1995, the district court entered an order adopting and approving a second consent decree concerning the removal of state prisoners from county jails, signed by the appellants, the Commissioner of the Department of Corrections, the Department of Corrections, the Alabama Department of Public Health, and the Administrator of the Jackson County Health Department. On July 2, 1997, the Attorney General and the Commissioner of the Alabama Department of Corrections (hereinafter collectively referred to as the "Attorney General") filed a motion to terminate the consent decrees and the permanent injunction pursuant to the Prison Litigation Reform Act ("PLRA"), codified at 18 U.S.C. § 3626(b)(2).[1] The Attorney General claimed status as an intervenor under 18 U.S.C. § 3626(b)(2) of the PLRA and as a representative of the Alabama Department of Corrections and the Department of Public Health. On January 27, 1998, the district court granted the Attorney General's motion for termination of both consent decrees and the permanent injunction.

The appellants argue that the Attorney General does not have standing to intervene to terminate the 1994 consent decree because the state of Alabama was not a party to that consent decree. They also challenge the decision of the district court not to hold an evidentiary hearing on the motion to terminate. The appellants further contend that the termination provisions of the PLRA under 18 U.S.C. § 3626(b)(2) are unconstitutional.

We review *de novo* a district court's judgment on intervention as of right. *See Purcell v. BankAtlantic Fin. Corp.,* 85 F.3d 1508, 1512 (11th Cir.1996). We review the district court's denial of an evidentiary hearing for abuse of discretion. *See United States v. Fernandez,* 136 F.3d 1434, 1438 (11th

---

[1]*Immediate termination of prospective relief.*—In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2).

Cir.1998). Questions of constitutional law we review *de novo*. *See Pleasant-El v. Oil Recovery Co.,* 148 F.3d 1300, 1301 (11th Cir.1998).

## II. DISCUSSION

*A.      Intervention by the Attorney General*

The appellants argue that the Attorney General did not possess the standing to intervene and file a motion to terminate the 1994 consent decree because the Attorney General was not a party to the decree. As an initial matter, we note that this circuit has held that "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit." *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989).[2] *See also Cox Cable Communications, Inc. v. United States,* 992 F.2d 1178, 1181 (11th Cir.1993). We, therefore, need not inquire into the Attorney General's standing to seek intervention in this case.

Under Federal Rule of Civil Procedure 24, a party may seek to intervene of right[3] or with the permission of the district court.[4] A movant must establish the following requirements to intervene as of right:

---

[2]Citing *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), the appellants argue that the Supreme Court has decided that intervenors are required under Article III to possess standing as a matter of constitutional law. This is not so. In *Diamond,* the Court stated that an intervenor, unless otherwise demonstrating Article III standing, may not initiate an appeal if the party on whose side he intervened has decided not to appeal. *Id.* at 68, 106 S.Ct. at 1706. The Court left open the question of "whether a party seeking to intervene before a District Court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III." *Id.* at 68-69, 106 S.Ct. at 1707. Here, appellants, not the State, initiated the appeal of the district court's order terminating the consent decrees. While ambivalent about their position, the county defendants have remained active in opposing the appeal of the district court's order terminating both consent decrees and the permanent injunction. *See* Brief of (County Defendant) Appellees, at 6-8. Accordingly, there is an existing "case or controversy."

[3]"Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated at the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).

[4]*See* Fed.R.Civ.P. 24(b).

> (1) his application to intervene is timely;  (2) he has an interest relating to the property or transaction which is the subject of the action;  (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest;  and (4) his interest is represented inadequately by the existing parties to the suit.

*Chiles,* 865 F.2d at 1213.

No party has challenged the timeliness of the Attorney General's intervention.  We focus instead on whether the Attorney General has sufficient "interest" in the existing suit to make intervention proper.  The intervenor must be "at least a real party in interest in the transaction which is the subject of the proceeding.  This interest has also been described as a direct, substantial, legally protectable interest in the proceedings."  *Worlds v. Department of Health & Rehabilitative Servs.,* 929 F.2d 591, 594 (11th Cir.1991) (per curiam) (footnotes, citations, and quotation marks omitted).  Here, the 1994 consent decree states in Section D, titled "Population," that:

> Inmates in the Jackson County Jail who have been sentenced to imprisonment in the custody of the Alabama Department of Corrections shall be transferred from the existing and new jail, and accepted by the Department of Corrections, on a timely basis.  A timely basis shall be defined as within 30 days of the time the necessary documents associated with the inmate's sentence and transfer have been completed and forwarded to the Department of Corrections.  The Jackson County Sheriff shall enlist the assistance of the Jackson County Circuit Judges and District Judge, as well as the assistance of the Circuit Clerk, to ensure timely preparation and forwarding of these documents.  Defendants shall inform the monitor of all unreasonable delays in the preparation and forwarding of these documents.

R5-117, 1994 Consent Decree at ¶ 25(g).  The decree orders that state inmates will be transferred from county to state jails within a specified period of time, impacting the economic ability of the State to have facilities available for the transfer.  The 1994 consent decree thus directly affects the interests of the State of Alabama, even though the State is not a party to the consent decree.

Furthermore, Alabama was a party to the initial suit.  The fact that certain parties formed a consent decree does not eliminate the State's interest in the suit.  As the Supreme Court stated:

> Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party's agreement.  A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors;  if properly raised, these claims remain and may be litigated by the intervenor.

**4**

*Local Number 93, Int'l Ass'n of Firefighters v. Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). Both consent decrees and the preliminary injunction arise out of the same litigation. It strains reason to argue now that these orders are so unrelated that a defendant to the initial litigation cannot now act as an intervenor.

Under the third and fourth factors described in *Chiles,* when the interests of the State are affected by the 1994 consent decree, prohibiting the State from intervening would impair the State's ability to protect its interests. *See Chiles,* 865 F.2d at 1213.[5] Alabama, therefore, satisfies the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Once a party establishes all prerequisites to intervention, the trial court has no discretion to deny the intervention. *See Purcell,* 85 F.3d at 1512.

The appellants argue that because the Attorney General did not specifically invoke Federal Rule of Civil Procedure 24 in his motion to terminate, the attempt to intervene must fail.[6] The Attorney General stated in its motion to terminate that it was intervening under 18 U.S.C. § 3626(b)(2). Here, the Attorney General did not file a motion to intervene, but rather filed only a motion to terminate the consent decree. Without expressly considering the intervention issue under Rule 24, the district court did, however, rule on the Attorney General's motion to terminate. In *Farina v. Mission Investment Trust,* 615 F.2d 1068 (5th Cir.1980), we held that it is within the discretion of the district court to treat a motion to remove as a motion to intervene. Since the district court granted the motion to remove, the circuit court concluded that the court necessarily had accepted the intervenor as a party in the suit. *Id.* at 1075.[7] Accordingly, we find that it was

---

[5]Additionally, Alabama's interest are not adequately represented by either the appellants or the county defendants. While both the State and the county were defendants in the initial action, they are, in reality, adverse parties because the county wants to relieve overcrowding of its jails by ensuring that state inmates are transferred to state jails.

[6]A party wishing to intervene must file a motion stating the grounds for intervention, even when intervention is permitted by statute. Fed.R.Civ.P. 24(c).

[7]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

within the discretion of the district court here to rule upon the motion to terminate as if the State also had filed a formal motion to intervene. Furthermore, we have also held that we will "disregard nonprejudicial technical defects" in complying with Rule 24(c). *See Piambino v. Bailey,* 757 F.2d 1112, 1121 (11th Cir.1985).[8] Therefore, we affirm the district court's granting to the Attorney General intervenor status by accepting, and ruling upon, its motion to terminate the 1994 consent decree.[9]

---

[8]When considering intervention of right, prejudice to existing parties—other than that caused by would-be intervenor's failure to act promptly—is not a factor to be considered. *See Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir.1977).

[9]In affirming the district court's acceptance of the Attorney General's intervention we do not dismiss lightly the appellants' concerns here. Our holding is based on the compelling nature of the State's interest in the litigation, in that the 1994 consent decree directly affected the State of Alabama by ordering the removal of state inmates from county prisons within a certain period of time.

We note with concern, however, the case of *Clark v. Patterson,* Civil Action No. CV 78-C5010-NE (N.D.Ala.), *see* Brief of Appellant, at 16-17, where the Attorney General of Alabama attempted to represent the views of the Sheriff of Madison County, Alabama, apparently without the sheriff's knowledge or permission. The State of Alabama may not intervene in a misguided effort to represent an adverse party. *See Kozak v. Wells,* 278 F.2d 104, 113 (8th Cir.1960) (Blackmun, J.) ("courts must be on guard against the improper use of the intervention process.... The procedural rules herein expressed are not to be taken advantage of where ... the motion for leave to intervene is sham.").

We depart company with the dissent on the issue of the scope of the interest of the State of Alabama. We read *Chiles* to hold that the State of Alabama does not need to establish Article III standing in order to intervene in this case. *Chiles* requires "a justiciable case and controversy between the parties already in the lawsuit," 865 F.2d at 1213; that provision is satisfied here. The county defendants supported Alabama's motion to terminate the consent decree and have participated as a party supporting that positing on appeal. This is in marked contrast to *Diamond,* as cited by the dissent, where the State of Illinois filed only a "letter of interest" expressing support for the intervenor's position. 476 U.S. at 63-64, 106 S.Ct. 1697. The county defendants have done a great deal more here. They are appellees and have chosen to pursue the matter as an active party in the litigation, filing briefs on appeal. Moreover, *Diamond* considers the ability of a party to initiate an appeal and specifically did not consider the requirements for intervention at the district court level. *See* 476 U.S. at 68-69, 106 S.Ct. 1697. Initiation of an appeal is not at issue here.

Furthermore, the interests of Alabama were affected by the November 1994 consent decree because the success of the decree hinged on reducing the number of inmates in the county facility. To reduce the number of inmates, the consent decree ordered Alabama to remove state inmates in a timely manner. Other portions of the consent decree directed the county defendants to improve the services available to the prison inmates. The facilities, services, and conditions for the old and new county jails mandated by the 1994 consent decree could only be achieved and maintained with a

*B.*     *Evidentiary Hearing*

The appellants argue that it was an abuse of discretion for the district court to refuse to conduct an evidentiary hearing concerning the current conditions at the prison and the scope of the prospective relief that the Attorney General wished to terminate.  We agree.

The PLRA grants the district court broad authority to terminate prospective relief upon a motion by any party or intervenor.  *See* 18 U.S.C. § 3626(b)(2).  There is, however, an important limitation on this authority.  Section 3626(b)(3) provides that

> Prospective relief shall not terminate if the court makes written findings *based on the record* that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3) (emphasis added).  It would read all meaning out of this section to force the party opposing termination to show that the consent decree meets the requirements of § 3626(b)(3) and then not provide that party with the opportunity to present evidence on that point.  We hold, therefore, that it was abuse of discretion for the district court to refuse to hold an evidentiary hearing.  *See also Tyler v. Murphy,* 135 F.3d 594, 597-98 (8th Cir.1998) (on remand proponents of prospective relief must be given opportunity to present evidence); *Benjamin v. Jacobson,* 124 F.3d 162, 179 (2d Cir.1997) (record may include

---

smaller prison population, making Alabama a key party to the success of the November 1994 consent decree.  The Supreme Court has noted that when some parties to a litigation resolve their claims through a consent decree, this does not eliminate the interests of "nonconsenting intervenors" whose "claims remain and may be litigated by the intervenor." *See Local Number 93,* 478 U.S. at 529, 106 S.Ct. at 3079.

It would be difficult, if not impossible, to keep in effect, as the dissent suggests, the provisions of the decree relating to services while not enforcing those provisions instructing Alabama to reduce the prison population.  The decree is not made up of two separate pieces, each of which can survive on its own.  In this situation, the decree must be read in its entirety. *Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984), cited by the dissent, is not in conflict with our decision here. *Newman* requires that the intervenor show the decree has "adversely affect[ed] his interest." *Id.* at 1517.  The Attorney General has satisfied that demonstration here.  Finally, as we have noted, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 216 (11th Cir.1993).

supplemental evidence presented to the court), *reh'g en banc granted,* Dec. 23, 1997; *Jensen v. County of Lake,* 958 F.Supp. 397, 406-07 (N.D.Ind.1997) (at hearing on termination, prisoners "will have the opportunity to show whether ongoing constitutional violations exist" at the jail); *Carty v. Farrelly,* 957 F.Supp. 727, 733 (D.V.I.1997) (holding evidentiary hearing to determine whether constitutional violations were current and ongoing).

The Attorney General argues that no evidentiary hearing was necessary because the "record" in this case was current. It is true that the court-appointed monitor, Dr. William E. Osterhoff, did provide eleven reports to the court, the most recent of which was filed two months prior to the motion to terminate. The Attorney General's argument fails, however, because the purpose of an evidentiary hearing is far greater than simply to receive a written report. A report alone cannot be cross-examined or disputed. The party opposing termination must be given the opportunity to challenge or supplement the findings of the monitor and to present evidence concerning the scope of the challenged relief and whether there are "current and ongoing" violations of federal rights in the prison.

C.      *Permanent Injunction*

Section 3626(b)(2) provides for the immediate termination of any prospective relief under certain conditions. The PLRA defines "prospective relief" to mean "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). "Relief" is defined as "all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlement agreements." 18 U.S.C. § 3626(g)(9). Accordingly, permanent injunctions, as a form of prospective relief, fall under the immediate termination provisions of the PLRA. We have previously affirmed the termination of an injunction under this same section of the PLRA. *See Parrish v. Alabama Dep't of Corrections,* 156 F.3d 1128, 1129

(11th Cir.1998). *See also Tyler v. Murphy,* 135 F.3d 594, 596 (8th Cir.1998) (holding that an injunction must be considered under restrictions of 3626(b)(2)).[10]

Appellants argue that the permanent injunction at issue here is based on findings of constitutional violations, and because a court is not authorized to grant injunctive relief against a state agency that is broader than necessary to remedy the constitutional violation, *see Gibson v. Firestone,* 741 F.2d 1268, 1273 (11th Cir.1984), the permanent injunction, by definition, is narrowly tailored to correct any constitutional violations and thus complies with requirements of the PLRA.

Since we have determined that it was improper for the district court to refuse to hold an evidentiary hearing concerning conditions in the prison or scope of relief approved in the litigation, we decline to address this portion of the appeal here. Rather, we will allow the district court to review appellant's arguments during the evidentiary hearing ordered in this opinion.

D.      *Constitutionality of PLRA, 18 U.S.C. § 3626(b)*

In a companion case, *Nichols v. Hopper,* 173 F.3d 820 (11th Cir.1999), we held that the termination provisions of the PLRA are constitutional under a separation of powers challenge as articulated in *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871). In *Dougan v. Singletary,* 129 F.3d 1424 (11th Cir.1997) (per curiam), *cert. denied,* --- U.S. ----, 118 S.Ct. 2375, 141 L.Ed.2d 743 (1998), we held that the PLRA termination provision did not violate the Fifth Amendment's Due Process Clause, *id.* at 1426-27; did not violate the equal protection component of the Fifth Amendment, *id.* at 1427; and did not violate the

---

[10]It is not unusual for a court to modify or even terminate an injunction in response to a change in the law. *See Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 431-32, 15 L.Ed. 435 (1855). *See also Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 2006, 138 L.Ed.2d 391 (1997) ("A court errs when it refuses to modify an injunction or consent decree in light of [statutory or decisional law] changes.").

separation of powers doctrine, *id.* at 1426.[11] The appellants' challenges to the constitutionality of the PLRA termination provisions, therefore, are without merit.

## III. CONCLUSION

We AFFIRM the district court's treatment of the Attorney General as an intervenor. We REVERSE the district court's decision not to hold an evidentiary hearing and REMAND to the district court to hold a hearing consistent with this opinion. We AFFIRM the district court's finding that the PLRA withstands constitutional scrutiny.

AFFIRMED in part, REVERSED in part, REMANDED.

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Loyd was entitled to an evidentiary hearing in the district court and that his constitutional challenge to the PLRA must fail under our precedents. However, I believe that the majority errs in holding that the Attorney General was entitled to seek termination of the entire November 1994 decree without satisfying Article III standing requirements.

There is no question that the Attorney General would be a permissible intervenor in a case where one of the parties to a consent decree also sought termination. Intervention in that context would not require a showing of Article III standing. *Chiles v. Thornburgh,* 865 F.2d 1197, 1212-13 (11th Cir.1989). Here, however, the Attorney General alone asked the district court to terminate the November 1994 decree. The parties to the decree, the county defendants, did not and have not sought to join the Attorney General's motion to terminate or independently move to terminate the decree. The Supreme Court's decision in *Diamond v. Charles,* 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), indicates that the Attorney General must satisfy Article III standing requirements in these circumstances.

---

[11]In *Dougan,* the plaintiffs challenged section 3626(b)(2) under the separation of powers doctrine that forbids legislation that "command[s] the federal courts to reopen final judgments," as articulated most recently in *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 219, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995).

In *Diamond,* noting Article III's requirement of injury-in-fact, the Court observed that, because of the profound effect of judicial review on the populace, "the decision to seek review must be placed 'in the hands of those who have a direct stake in the outcome.' It is not to be placed in the hands of 'concerned bystanders,' who will use it simply 'as a vehicle for the vindication of value interests.' " *Id.* at 62, 106 S.Ct. 1697 (citations omitted). Accordingly, the Court held that "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Article III." *Id.* at 68, 106 S.Ct. 1697. Because the defendant in that case, the State of Illinois, had not filed an appeal, the intervenor could not simply attempt "to ride 'piggyback' on the State's undoubted standing," *id.* at 64, 106 S.Ct. 1697, but had to show that he had satisfied Article III's demands in order to appeal since "in the absence of the State [as an appellant], there is no case for Diamond to join." *Id. See also United States v. AVX Corp.,* 962 F.2d 108, 112-13 (1st Cir.1992) (holding that intervenor who opposed consent decree could not appeal the district court's order approving the decree without satisfying Article III standing requirements). The same result obtains here. Because the Attorney General alone asked the district court to terminate the Nov 1994 consent decree, it must show that it has a direct stake in whether or not that consent decree will continue in force. Accordingly, the majority errs in concluding that the Attorney General was entitled to seek termination of the consent decrees without satisfying Article III standing requirements.

Our decision in *Chiles* is not to the contrary. In *Chiles,* we recognized that a party seeking to intervene need not establish Article III standing "as long as there exists a justiciable case or controversy between the parties already in the lawsuit." *Chiles,* 865 F.2d at 1213. Here, however, at the time the Attorney General moved to terminate the consent decrees, there was no ongoing case or controversy between the parties to the decree—the case between them had been settled by the consent decree that the Attorney General was seeking to terminate. Moreover, the fact that the county defendants acquiesced in the termination of the consent decrees before both the district court and this Court is not sufficient to create a case or controversy.

**11**

The Supreme Court rejected a similar contention in *Diamond.* In *Diamond,* the State of Illinois filed a "letter of interest" expressing its support for the intervenor's position and noting that it was still a "party" to the litigation. The Court found that this "mere expression of interest ... insufficient to bring the State into the suit as an appellant," explaining that "[t]he State's general interest may be adverse to the interest of appellees, but its failure to invoke our jurisdiction leaves the Court without a 'case' or 'controversy' between appellees and the State of Illinois." *Diamond,* 476 U.S. at 63-64, 106 S.Ct. 1697. The same principle applies here. Because the county defendants did not invoke the district court's jurisdiction and move to terminate the decrees, there was no case or controversy between the plaintiffs and the county defendants at the time the Attorney General filed the motion to terminate.

The majority concludes that the Attorney General has a sufficient direct and substantial interest in the November 1994 consent decree, even though he was not a party to the decree, because one of the paragraphs of the consent decree requires transfer of inmates from county jails to state-run jails within a specified period of time. I agree that the Attorney General has a direct stake in the continued existence of this portion of the consent decree. I do not think, however, that the fact that the Attorney General has a direct stake in one provision of this consent decree, albeit an important one, gives him the right to seek the termination of the *entire* decree, the vast majority of which only relates to the county defendants. The majority offers no reason why the Attorney General should be able to seek termination of those portions of the decree that only relate to the county defendants. Moreover, as the majority recognizes, the state and county defendants have different and adverse interests, making it inappropriate for the Attorney General to act as a representative for the county defendants.

This reasoning finds support in our decision in *Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984). In *Newman,* we considered whether the Attorney General of Alabama had standing to challenge a consent decree to which he had not agreed and whether he could seek modification of that decree. Because the Attorney General was a party to the decree and the decree was approved over his objections, we held that he

**12**

had standing to challenge the decree. However, we explained that "he would need to show that the decree adversely affects his interests as Attorney General of Alabama. He could not assert the interests of other parties to the litigation." *Id.* at 1517. Likewise, we affirmed the district court's conclusion that the Attorney General "had no standing to seek to modify the decree in respects that were not prejudicial to the interest of the Attorney General." *Id.* at 1518. As *Newman* makes clear, the Attorney General's standing is confined to his own interests; he cannot assert the interests of other parties to the litigation. *See also Graddick v. Newman,* 453 U.S. 928, 934, 102 S.Ct. 4, 69 L.Ed.2d 1025 (1981) (Powell, J.) (denying stay to Alabama Attorney General on basis that he lacked standing because, at the time, Alabama statutes vested responsibility over prison system in the Governor, who opposed stay).

I recognize that, even if the Attorney General lacks the authority to terminate the remaining portions of the November 1994 decree, the district court would have the authority to do so *sua sponte. See United States v. City of Miami,* 2 F.3d 1497, 1506 (11th Cir.1993). However, I believe that the district court should have an opportunity to decide whether it will exercise its discretion to act *sua sponte,* especially given the fact that its decision on this point will affect the scope of the evidentiary hearing it needs to hold. This follows the same approach we took in *Magluta v. Samples,* 162 F.3d 662 (11th Cir.1998), where we remanded a case to the district court to permit the district court to decide whether it would dismiss plaintiff's case for failure to comply with the local rules. *Id.* at 664-65.

**13**