# United States Court of Appeals
## For the First Circuit

No. 00-1052

JAAN LAAMAN, ET AL.,

Plaintiffs, Appellants,

v.

WARDEN, NEW HAMPSHIRE STATE PRISON, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, <u>Chief Judge</u>,

Coffin, <u>Senior Circuit Judge</u>,

and Boudin, <u>Circuit Judge</u>.

<u>Elliott Berry</u> with whom <u>Alan Linder</u>, and <u>New Hampshire Legal Assistance</u>, were on brief, for appellants.
<u>Daniel J. Mullen</u>, Senior Assistant Attorney General, with whom <u>Philip T. McLaughlin</u>, Attorney General, was on brief, for appellees.

January 17, 2001

**TORRUELLA, Chief Judge.** A 1975 civil rights suit by inmates in New Hampshire State Prison ultimately resulted in a consent decree, which was amended in 1990. In response to a 1993 suit alleging contempt of that decree, and pursuant to the Prison Litigation Reform Act of 1995 (the "PLRA"), 18 U.S.C. § 3626, prison officials successfully moved to terminate the decree. The principal issue on appeal is when, if ever, must the district court afford inmates who allege "current and ongoing" violations of federal rights the opportunity to supplement the existing record.

## BACKGROUND

This proceeding has a complex procedural history, which we summarize for the purpose of this appeal.

In 1975, inmates at the New Hampshire State Prison in Concord (the "Prison") filed individual civil rights actions (later consolidated into a class action) against state officials in federal district court pursuant to 42 U.S.C. § 1983. Laaman v. Helgemoe, 437 F. Supp. 269, 275 (D.N.H. 1977). In an extensive opinion, the court made "specific findings" that prison conditions violated inmates' Eighth Amendment rights, id. at 323-25, and issued a sixteen-part order specifying required relief, id. at 325-30. The order was implemented in a consent decree approved by the court on August 10, 1978, which was later amended by a second consent decree approved on May 22, 1990. Judge Devine, who had inherited the case from then-District Judge

-3-

Bownes, approved the second decree. The amended decree provided that the district court would "retain jurisdiction . . . for the purpose of assuring compliance" until July 1, 1993.

Two weeks prior to the expiration of the district court's jurisdiction, the inmates filed a civil contempt motion alleging that prison officials had failed to comply with the decree. Although the district court determined the necessary level of compliance to avoid a finding of contempt and held an evidentiary hearing in December of 1995, no order issued. Upon Judge Devine's death in February of 1999, the case was reassigned to Judge Barbadoro, with the motion for contempt still pending. Mindful that the PLRA had "significantly changed the rules governing consent decrees addressing prison conditions,"[1] Judge Barbadoro ordered the plaintiffs to "explain[] why the Consent Decree should not be terminated and the pending Motion for Contempt be deemed moot." Laaman v. Powell, Civil Nos. 75-258-SD/B, 77-256-SD/B, 87-301-SD/B (D.N.H. April 20, 1999) [hereinafter Laaman, April 20 Order]. The district court then terminated the decree in a June 15, 1999 order, holding that "[t]he findings called for in

_____

[1] The PLRA, in part, sought "to oust the federal judiciary from day-to-day prison management" and serve as a "last rite" for many consent decrees. Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 655 (1st Cir. 1997) (citing 141 Cong. Rec. 14,419 (1995)). This "ambient intent" provides the basis for the general unfriendliness of the PLRA toward existing consent decrees, the termination of which this Court has held to be constitutional and provided for by statute. Id. at 655-61.

-4-

§ 3626(b)(2) were never made," and that "plaintiffs have failed to demonstrate that a basis currently exists for finding that the decree 'extends no further than necessary to correct the violation of the Federal right,' or that the decree is 'narrowly drawn and the least intrusive means to correct' any alleged violations of the plaintiffs' federal rights." Laaman v. Powell, Civil No. 75-258-B (D.N.H. June 15, 1999) [hereinafter Laaman, June 15 Order]. Plaintiffs, noting that § 3626(b)(3) limits termination in certain cases of "current and ongoing" violations of federal rights, and claiming that the delay in disposition had prejudiced them unfairly, appealed to this Court.

## DISCUSSION

First, appellants argue that the PLRA, specifically § 3626(b)(3), requires that a district court allow plaintiffs an opportunity to present evidence prior to exercising its termination power under § 3626(b)(2), and that they were denied this opportunity. Second, in the absence of such a statutory mandate, they suggest that the district court abused its discretion here by failing to provide plaintiffs an opportunity to supplement the existing record. Third, two remaining issues not directly considered by the parties - the district court's actual rationale and the scope of further proceedings - require attention.

**A**

-5-

Whether the PLRA requires that inmates be given an opportunity to supplement the existing record is purely a question of statutory interpretation, and as such, we afford it de novo review. Rouse, 129 F.3d at 653-54. We begin with the language of the statute itself. Stowell v. Ives, 976 F.2d 65, 69 (1st Cir. 1992). In so doing, we assume that the words of the statute comport with their ordinary meaning, and that their ordinary meaning accurately expresses legislative intent, FMC Corp. v. Holliday, 498 U.S. 52, 57 (1990), only resorting to legislative history or other aids of statutory construction in the case of ambiguity or an unreasonable result, United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987).

The PLRA does not specifically provide for an evidentiary hearing prior to termination of a consent decree. Cagle v. Hutto, 177 F.3d 253, 258 (4th Cir. 1999), cert. denied, 120 S. Ct. 2723 (2000). 18 U.S.C. § 3626(b)(2) provides for the "immediate termination of prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[2] However, § 3626(b)(3) expressly limits the court's

_____

[2] Given the extensive nature of the consent decree here and the fact that it long pre-dated the enactment of the PLRA, neither side contends that this consent decree meets the (b)(2) requirements. Cf. Rouse, 129

-6-

termination power, noting that "[p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation" (emphasis added). Several courts have read these two sections together as creating a gap that might be filled by an evidentiary hearing. See Benjamin v. Jacobsen, 172 F.3d 144, 165-66 (2d Cir.), cert. denied sub nom. Benjamin v. Kerik, 528 U.S. 824 (1999) (noting that the (b)(3) requirement of "written findings" meant that the "immediate termination" of (b)(2) was necessarily less than instantaneous); see also Berwanger v. Cottey, 178 F.3d 834, 839 (7th Cir. 1999) ("immediate" in (b)(2) does not mean "instant," given that court needs "time to make finding" called for in (b)(3)). Because the PLRA does not on its face address whether the district court must make these written findings when the conditions of (b)(3) are met, nor does it explain how a court could make written findings of current conditions on the basis of a stale record, courts have suggested that there are circumstances in which additional evidentiary findings are appropriate or even necessary prior to termination. See Hadix v.

_____

F.3d at 661 (finding it implausible, on the record, that (b)(2) requirements were met by prior factual findings).

-7-

Johnson, 228 F.3d 662, 671-72 (6th Cir. 2000); Gilmore v. California, 220 F.3d 987, 1008, 1010 (9th Cir. 2000); Cagle, 177 F.3d at 258; Loyd v. Alabama Dep't of Corr., 176 F.3d 1336, 1342 (11th Cir.), cert. denied, 528 U.S. 1061 (1999); Benjamin, 172 F.3d at 165-66 ("Evidence presented at a prior time . . . [can] not show a violation that is 'current and ongoing.'"  As a result, "the record" referred to in (b)(3) "must mean a record reflecting conditions as of the time termination is sought.").

The other courts of appeals that have assessed whether the PLRA requires an evidentiary hearing prior to termination of a consent decree have reached somewhat different results as to when such a hearing is required.  In Benjamin, the Second Circuit interpreted § 3626(b) "to mean that, when the plaintiffs so request . . . the district must allow the plaintiffs an opportunity to show current and ongoing violations of their federal rights."  Id. (emphasis added); see also Hadix, 228 F.3d at 671-72 ("[T]he party opposing termination must be given the opportunity to submit additional evidence.").  The Eleventh Circuit, although it did not find that an evidentiary hearing was mandated by statute, found that a district court's refusal to hold such a hearing constituted an abuse of discretion, even when current reports were being provided to the court.  See Loyd, 176 F.3d at 1342.  The Fourth Circuit has placed a higher burden on the plaintiff, holding that a district court "may, in its discretion conduct a pretermination

-8-

evidentiary hearing," but that it "at a minimum . . . _must_ hold such a hearing when the party opposing termination alleges specific facts which, if true, would amount to a current and ongoing constitutional violation." Cagle, 177 F.3d at 258 (emphasis added).

Although we did not specifically address this issue in Rouse, we suggested a similar approach to that taken by the Eleventh Circuit in Loyd, albeit with more weight given to the district court's familiarity with the consent order and subsequent proceedings. The Rouse plaintiffs had argued that in the absence of findings to satisfy the (b)(2) burden, "the district court should have conducted an inquiry into whether a violation of a federal right exists currently." Rouse, 139 F.3d at 661. We noted "the district court's intimate familiarity with this protracted litigation [and] its informed evaluation of current prison conditions." Id. at 662. Our decision not to require further evidentiary findings was based partly on the fact that the Rouse court had been receiving periodic reports as to the incidents covered by the consent decree. Id.

We think the approach hinted at in Rouse is the correct one. As the Fourth Circuit said in Cagle, the plain language of § 3626(b) is reasonably clear. If Congress had wished to create a right to an evidentiary hearing for plaintiffs, it certainly could have done so. Cagle, 177 F.3d at 258. However, we are unwilling to rob the (b)(3) limitation of all force, or to leave its application entirely to the

unreviewed discretion of the district court.  Despite the PLRA's general unfriendliness toward the continuation of existing consent decrees, Congress clearly anticipated that a district court might make "written findings based on the record" of "current and ongoing violation[s]."  It is hard to imagine how a district court could ever make such written findings without an updated record.  In certain circumstances, then, it would seem an appropriate use of the court's discretion to hold an evidentiary hearing; similarly, in certain circumstances it would be an abuse of that discretion to deny plaintiffs an evidentiary hearing once requested.

**B**

Given that they are not entitled by statute to an evidentiary hearing, plaintiffs argue that in this case the district judge abused his discretion by not holding a hearing.  We first assess whether further evidence was necessary in this case, and then determine whether plaintiffs in fact lacked the opportunity to supplement the record.

We should start by noting that if any record would benefit from supplementary findings, it would be this one.  Although an extensive trial record exists, no fact-finding took place after 1995. "Evidence presented at a prior time [can]not show a violation that is 'current and ongoing.'"  Benjamin, 172 F.3d at 166.  At times, an evidentiary hearing is not necessary because the district court has a comprehensive knowledge of whether a prison is, or is not, continuing

-10-

to violate the consent decree.  See Rouse, 129 F.3d at 662 (district court had been receiving periodic evaluations).  But see Loyd, 176 F.3d at 1342 (possession of eleven reports, the most recent two months prior, by district court, insufficient).  Not only had the district court here received no further information on potential violations between the 1995 trial and the 1999 ruling, but the case had been transferred to an entirely different judge who lacked any intimate knowledge of the prison conditions or the circumstances of the decree. Cf. Rouse, 129 F.3d at 661 ("A trial court generally is thought to be the best interpreter of its own prior rulings and findings, and this case is no exception.") (internal citations omitted).  The attenuated and inevitably disjointed history of the present case suggests that the ordinary factors counseling reliance on the district court's familiarity with the case are lacking here.

Appellee argues that the district court did not abuse its discretion because it allowed the plaintiffs to supplement their findings in a memorandum, received that memorandum, and found that plaintiffs had not met their burden under (b)(3).  The district court did request that plaintiffs "explain[] why the Consent Decree should not be terminated and the pending Motion for Contempt be deemed moot." Laaman, April 20 Order.  Plaintiffs filed a memorandum on May 15, 1999, highlighting the evidence of Eighth Amendment violations committed prior to 1995 that was contained in the existing record.  The district

-11-

court then found that "plaintiffs have failed to demonstrate that a basis currently exists for finding that the decree 'extends no further than necessary to correct the violation of the Federal right,' or that the decree is 'narrowly drawn and the least intrusive means to correct any alleged violations of the plaintiffs' federal rights." Laaman, June 15 Order.

Of course, the district court could not have abused its discretion if it did, in actuality, grant plaintiffs the opportunity to supplement the evidentiary record, and they simply neglected to do so. However, although the April 20 Order could have been understood as an opportunity for plaintiffs to supplement the record with more contemporaneous allegations of constitutional violations, it could also have been interpreted as a limited request for plaintiffs to highlight the most heinous parts of the already existing record. See Laaman, April 20 Order at 2 ("It does not appear from a review of the record that the Laaman Consent Decree can survive.") (emphasis added). Plaintiffs apparently did not interpret the April 20 Order as a request to enhance the record or introduce new allegations of harm. Although plaintiffs' discussion of (b)(3) in their responsive memorandum noted that "the record may include supplemental information," the extensive list of constitutional violations presented in their response only addressed those which had occurred prior to 1995 and were already contained in the record. Moreover, neither the district court's June

-12-

15, 1999 Order nor its June 30, 1999 Order (following plaintiffs' Motion to Alter or Amend) suggested that the failure to provide supplementary evidence of current and ongoing violations was relevant to the decision.

Given our holding in Rouse and the similar approaches taken by other courts of appeals that have reached this issue, we think that in certain cases the PLRA allows a plaintiff the opportunity to present evidence consistent with § 3626(b)(3) prior to the termination of a consent decree under § 3626(b)(2). The scope of that evidentiary presentation is a matter of discretion for the district court; however, Rouse contemplates that the district court exercise that discretion based on its familiarity with the record and with any "current and ongoing" violations that might not appear in the record due to its age, while considering the PLRA's bias toward the termination of consent decrees. In this case, given the peculiar circumstances of the litigation, the severe potential for prejudice upon termination of the consent decree, and the substantial evidence of violations prior to 1995, the district court should have more clearly indicated its evidentiary requirements in the April 20 Order, or at the very least given plaintiffs an opportunity to amend their May 15 pleading to address supplementary allegations. To simply terminate without allowing plaintiffs such an opportunity was an abuse of the district court's discretion.

## C

There remain two issues requiring brief comment. One relates to the district court's June 15, 1999 order in which the court declared that the existing consent decree did not meet the conditions of § 3626(b)(2) and went on to say the following:

> Moreover, plaintiffs have failed to demonstrate that a basis currently exists for finding that the decree "extends no further than necessary to correct the violation of the Federal right" or that the decree is "narrowly drawn and the least intrusive means to correct" any alleged violations of the plaintiffs' federal rights. Accordingly, the Consent Decree must be terminated.

Laaman, June 15 Order. This determination was repeated in substance in the court's June 30, 1999 order.

What may be buried in this paragraph and account for the ultimate result is a double assumption: that no matter what the plaintiffs showed in an evidentiary hearing, nothing in that showing could in light of the new statutory requirements justify a continuation of this consent decree; and that the only option permitted was to terminate the decree while reserving (as the June 15 order did) "plaintiffs right to seek relief from any further alleged Eighth Amendment violation in separate actions." The first assumption may well be right, given the stringent conditions attached to the "is not terminated" provision in § 3626(b)(3). But the second assumption,

which we may be misattributing to the district court's order, does not seem to us correct.

The "limitation" provision, preserving an option to perpetuate an existing decree even though the now required findings were "absen[t]" when the "relief was [originally] approved or granted," § 3626(b)(2), is not in our view limited to cases where current violations exist <u>and</u> the statutory findings can now be made as to the <u>original</u> decree. Rather, while the statutory language is not perfectly clear, it appears to us likely that the limitation provision assumes that the district court may modify the decree so that it both addresses the current violation and conforms to the statutory requirements ("no further than necessary, etc.). <u>See</u> <u>Gilmore</u>, 220 F.3d at 1007-08.

Such a reading would appear to serve Congress's double purpose of assuring that there is still a "current and ongoing violation" to justify an existing decree and also its overriding purpose that all such decrees rest on findings that show that the decree is no broader than necessary, in the terms set forth in both § 3626(b)(2) and (b)(3). Since this legal issue has not fully been argued by the parties, we do not foreclose the district court from considering it further after full briefing; but as presently advised the court's apparent rationale quoted above seems to us mistaken.

The other issue that warrants brief comment but, again, not a resolution, is what options are open to the district judge if, on

remand, he should find that a current and ongoing violation exists. In our view it should not be assumed that the district court is then automatically required to alter the consent decree and make the statutory findings that would permit the decree to continue. But see Gilmore, 220 F.3d at 1008 (holding to the contrary). Imagine, for example, that the evidentiary hearing shows few or limited violations that could more appropriately be rendered by terminating the present case and allowing an individual to press a new suit in which a fresh decree could be addressed directly to these issues.

However, it seems to us that the legal issues thus raised and the judgments called for are more reasonably made only after the district court has had an opportunity in an evidentiary hearing to get a fuller picture of what "current and ongoing violation[s]" of federal rights, if any, still exist. If there are none - and the burden remains on the plaintiffs to show that such violations persist - the question of perpetuating this case and molding new but narrower relief will be moot; conversely, if violations are shown, the court will have a more developed context for answering the legal and policy questions that we have noted but on which we reserve judgment.

## CONCLUSION

Plaintiffs should have the opportunity to demonstrate "current and ongoing" violations of constitutional rights that would prevent termination of the Consent Decree pursuant to § 3626(b)(3).

-16-

Whether this determination may be facilitated by proffered showings and briefings in the first instance or whether a full-fledged evidentiary hearing is required before further action is a matter for the discretion of the district court.  The decision below is **vacated and remanded for further action consistent with this opinion**.