[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2005
THOMAS K. KAHN
CLERK

No. 05-11415
Non-Argument Calendar

_____

D. C. Docket No. 98-00975-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO ALBERTO RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 1, 2005)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After admitting to violating the terms of his supervised release, Pedro

Alberto Rodriguez appeals his 14-month sentence.  After review, we affirm.

## I. BACKGROUND

A.    First Revocation of Supervised Release

On April 21, 1999, Rodriguez was charged in a 58-count indictment in the Southern District of Florida.  On December 6, 1999, Rodriguez pled guilty to conspiracy to steal United States mail and possession of United States mail, in violation of 18 U.S.C. § 371.  On June 19, 2000, Rodriguez was sentenced to 21 months' imprisonment and three years' supervised release.

Apparently Rodriguez spent very little time in prison because on December 21, 2000, the district court in the Southern District of Florida issued a warrant for Rodriguez's arrest based on the Untied States Probation Office's petition to revoke his supervised release.  The petition was based on Las Vegas, Nevada, authorities charging Rodriguez with possession of a forged instrument.  On February 15, 2001, Rodriguez admitted violating the terms of his supervised release, and the district court sentenced him to 11 months' imprisonment and 25 months' supervised release.

B.    Second Revocation of Supervised Release

On November 16, 2001, Rodriguez apparently completed his 11-month sentence as he was released from federal prison in Miami and transferred to Pensacola, Florida, to face pending state charges there.  It is undisputed that

Rodriguez remained in state custody until March 6, 2002.

On September 30, 2002, the United States Probation Office petitioned the district court in the Southern District of Florida for an arrest warrant, alleging that Rodriguez had violated the terms of his supervised release when he was arrested on June 11, 2002, in the Southern District of New York on a stolen mail charge. The district court signed the petition and a warrant issued the same day.

Rodriguez, already in custody on the New York charges, was arrested on November 29, 2004, and transferred to the Southern District of Florida on December 15, 2004. As stated above, Rodriguez admitted to violating the terms of his February 15, 2001 supervised release. However, Rodriguez asserted that the district court did not have jurisdiction to revoke his supervised release because: (1) his term of supervised release had already expired; and (2) the September 2002 warrant was not sworn.

The district court rejected Rodriguez's arguments, again revoked his supervised release, and sentenced him to 14 months' imprisonment. Rodriguez appeals.[1]

---

[1] "A district court's revocation of supervised release is reviewed under an abuse of discretion standard." United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994). However, whether the district court had jurisdiction to revoke Rodriguez's supervised release is subject to de novo review. See United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002). We also review questions of constitutional law de novo. See Loyd v. Ala. Dep't of Corr., 176 F.3d 1336, 1339 (11th Cir. 1999).

## II. DISCUSSION

Pursuant to 18 U.S.C. § 3624(e), "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." See United States v. Johnson, 529 U.S. 53, 57, 120 S. Ct. 1114, 1117 (2000); United States v. Okoko, 365 F.3d 962, 964 (11th Cir. 2004). Furthermore, the power to revoke supervised release and sentence a defendant "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued . . . ." 18 U.S.C. § 3583(i); see Okoko, 365 F.3d at 964.

In this case, Rodriguez was sentenced to a term of 25 months' supervised release on February 15, 2001. According to § 3624(e), his term of supervised release did not run while he was in either federal or state custody. Johnson, 529 U.S. at 57, 120 S. Ct. at 1117 (Section 3624(e) "directs that a supervised release term does not commence until an individual 'is released from imprisonment.'").

On November 16, 2001, Rodriguez was released from federal prison in Miami. However, he was immediately transferred to the State of Florida, where he remained in custody until March 6, 2002. Thus, Rodriguez's 25-month term of

4

supervised release did not begin to run until March 6, 2002, and, thus, ran until April 6, 2004.

Accordingly, Rodriguez's June 11, 2002 arrest and September 30, 2002 warrant clearly fall within the period of time in which Rodriguez was on supervised release. Furthermore, because the district court issued a warrant for Rodriguez's arrest before the term of Rodriguez's supervised release expired, it is immaterial that the district court did not actually revoke Rodriguez's term of supervised release and sentence him to 14 months' imprisonment until December 2004. See 18 U.S.C. § 3583(i).[2]

For all the above reasons, we affirm Rodriguez's 14-month sentence.

**AFFIRMED.**

---

[2]Rodriguez's assertion that § 3624(e) violates his due process rights by automatically tolling the period in which his term of supervised release runs without giving him notice and an opportunity to be heard is without merit. We also reject, as meritless, Rodriguez's assertion that the district court did not have jurisdiction to revoke his supervised release because the warrant for his arrest was unsworn. While an illegal arrest may result in the suppression of items seized as a result of it, see, e.g., United States v. Robinson, 690 F.2d 869, 877-78 (11th Cir. 1982), it will not divest the district court of jurisdiction to adjudicate the case against the defendant or otherwise "suppress" his presence before the court, see Gerstein v. Pugh, 420 U.S. 103, 119, 95 S. Ct. 854, 865 (1975).