United States Court of Appeals,

Eleventh Circuit.

No. 97-6773.

Donald PARRISH, on behalf of themselves and all others similarly situated, Gary Beasley, on behalf of themselves and all others similarly situated, et al., Plaintiffs-Appellees,

v.

ALABAMA DEPARTMENT OF CORRECTIONS, Joe S. Hopper, Commissioner of the Alabama Department of Corrections, Defendants-Appellants.

Sept. 28, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No.CV-79-G-301-NW), J. Foy Guin, Jr., Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and STAFFORD[*], Senior District Judge.

EDMONDSON, Circuit Judge:

The Alabama Department of Corrections appeals the refusal of the district court to terminate an injunction. We reverse and remand to the district court with instructions to terminate the injunction.

*BACKGROUND*

The District Court for the Northern District of Alabama entered an injunction in 1982 prohibiting Alabama and Lauderdale County from housing state prisoners in the Lauderdale County Jail for more than 30 days. The district court entered the injunction to alleviate overcrowding (and associated health problems) at the jail. In 1991, the Governor of Alabama and the Alabama Department of Corrections Commissioner were held in contempt for violating the injunction. In the light of a second contempt order in 1993, Lauderdale County constructed a new jail. The County

---

[*]Honorable William Stafford, Senior U.S. District Judge for the Northern District of Florida, sitting by designation.

finished the new jail two years ago. In 1997, the Alabama Department of Corrections moved to terminate the injunction under the Prison Litigation Reform Act, 18 U.S.C.A. § 3626 (West Supp.1998) ("PLRA"). Lauderdale County opposed the motion. The district court denied the motion, and the Alabama Department of Corrections appeals.

*DISCUSSION*

An injunction directed to jail conditions must be terminated if the injunction was issued in the absence of a finding by the district court that the injunction (a) is narrowly drawn, (b) extends no further than necessary to correct the violation of a federal right, and (c) is the least intrusive means necessary to correct the violation of a federal right. *See id.* § 3626(b)(2). An injunction shall not terminate, however, if the court accurately makes written findings, based on the record, that the injunction "remains necessary to correct a current and ongoing violation of the Federal right" and meets the three criteria in Section 3626(b)(2). *See id.* § 3626(b)(3).

The parties dispute whether a "current and ongoing" violation of a federal right exists at the Lauderdale County Jail.[1] If no violation exists, then the 1982 injunction must be terminated. After examining the record, we conclude the evidence is insufficient to prove that a current and ongoing violation of a federal right exists in the County's jail. Therefore, the injunction must be terminated.

Alabama argues that because no constitutional violations exist at the jail right now, no "current and ongoing" violation can exist. This interpretation may be a correct view of what

---

[1]The district court made written findings under Section 3626(b)(3) that the 1982 injunction was narrowly drawn, extended no further than necessary to prevent the jail from being overcrowded, and was the least intrusive means to correct and to prevent overcrowding (and related problems) at the Lauderdale County Jail. Alabama does not contest these findings; so we accept them. We stress, however, that overcrowding is not necessarily a violation of a federal right. *See Rhodes v. Chapman,* 452 U.S. 337, 347-48, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The only issue truly before us is whether the district court's other written findings demonstrate a current and ongoing violation.

Congress intended.[2]  But, Alabama's interpretation might be an incorrect interpretation of "current and ongoing" because it could blind courts to violations of federal rights that a court might reasonably expect to recur soon if the injunction is dissolved.  This interpretation may possibly also give too little weight to the prospective nature of the word "ongoing."[3]

The County has advanced a broader interpretation of "current and ongoing."  In the district court, the County contended that "current and ongoing" means a substantial and very real danger that a violation of rights will follow the termination of the injunction.  *See James v. Lash,* 949 F.Supp. 691, 693 (N.D.Ind.1996) (construing "current and ongoing" in PLRA).  We need not decide, however, precisely what "current and ongoing" means.  Even if we accept—for argument's sake—the County's "substantial and very real danger" standard, the County cannot prevail in this case.

Whether there is a substantial and very real danger of a violation of a federal right recurring soon at the Lauderdale County Jail in the absence of an injunction may be a mixed question of law and fact.  But we need not decide whether it is a mixed question or a question of fact only.  Even if we review for clear error, we do see reversible error.

---

[2]Congress's intention in enacting the PLRA looks to be in line with the Supreme Court's view on the involvement of the federal courts in state prison systems.  Both Congress and the Court suggest a reduced role for federal courts.  When confronted with state prison litigation, the Supreme Court has written that "involvement of federal courts in the day-to-day management of prisons [has led to] squandering judicial resources with little offsetting benefit to anyone.... [F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."  *Sandin v. Conner,* 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995);  *see* H.R. Conf. Rep. 104-378 (1995) (stating that Congress designed Section 3626 to ensure that prospective relief is the "*minimum* necessary to correct the violation of a federal right") (emphasis added).

[3]The phrase "current *and* ongoing" was originally enacted as "current *or* ongoing."  The phrase was amended in 1997 to its present form.  *See* Department of Justice Appropriations Act, 1998, Pub.L. No. 105-119, § 123(a)(2), 111 Stat. 2440, 2470 (1997) (emphasis added).

The district court seemed to rely on two pieces of evidence—a newspaper article and the two contempt orders—to find that constitutional violations are likely to recur if the injunction is lifted. Relying on these two things to find there is a current and ongoing violation of a federal right produced clear error.

First, the court—in a footnote added by amendment to the district court opinion—quoted a newspaper report that included the following statement: "Prisons Commissioner Joe Hopper said Monday state prisoners would continue to back up in county jails until the Legislature properly funds the prison system."[4] We question the usefulness of this report of Joe Hopper's statement in determining whether a violation of the Federal Constitution is likely to result if the injunction is lifted. *See Cofield v. Alabama Pub. Serv. Comm'n,* 936 F.2d 512, 517 (11th Cir.1991) (concluding that district court erred when it took judicial notice of newspaper article as proof of fact asserted in article). The report does not suggest that state prisoners would "back up" to the point where the Constitution would be violated. In addition, even if we assume the newspaper is an accurate report of what was said, statements to the press are often made for reasons that have no relation to the true intent of the speaking party. Moreover, to the extent the report indicates disagreement between Alabama's Legislative and Executive Branches that might, someday, cause overcrowding, this kind of internal conflict about policymaking only further convinces us that a federal court should not interfere now. *See Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (stressing deference to state executive and legislative branches in state prison system litigation).

Second, the district court relied on the 1991 and 1993 contempt orders to suggest that overcrowding due to the presence of state prisoners in county jails will recur. That the contempt

---

[4]Neither party—by motion or by offering the article into evidence at the hearing—seems to have supplied the newspaper article to the district court. We assume, therefore, the district court amended its opinion to take judicial notice of the newspaper article.

findings were based on violations of a federal right is, however, not clear. Violating the 1982 injunction does not necessarily mean that a federal right was violated. *See Dolihite v. Maughon,* 74 F.3d 1027, 1055 (11th Cir.1996) (failing to meet requirements of consent decree was no per se constitutional violation); *Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir.1986) ("[R]emedial decrees are the means by which unconstitutional conditions are corrected but they do not create or enlarge constitutional rights").

The pertinent injunction in this case is more than fifteen years old. The Supreme Court has cautioned that injunctions are not to stay in place "in perpetuity." *Board of Educ. v. Dowell,* 498 U.S. 237, 248, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991).[5] To follow the Court's guidance, earlier violations—made right in the meantime—of the injunction must eventually be forgiven. We conclude that, by now, the past acts of contempt cannot count for much: five years have elapsed since the last contempt finding, a new jail has been constructed, no current constitutional violations exist, and the persons then held in contempt have been replaced.

Other considerations aid our conclusion that the record does not support the existence of a substantial and very real danger of violating a federal right at the Lauderdale County Jail. Most important, no one even claims the jail is presently overcrowded. Since the new jail opened, an average of 130 prisoners per day are held in the jail. The jail has a 153 prisoner capacity. We also note that between 1 July 1997 and 6 July 1997 (the only period for which we have records) the jail held between 78 and 83 inmates. And, a nurse and doctor are now under contract to visit the jail

---

[5]*Dowell* makes this statement for consent decrees, but consent decrees and injunctions are interchangeable in this context. *See System Fed'n No. 91 v. Wright,* 364 U.S. 642, 650-51, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).

regularly.[6]

From the record made in the district court, we conclude, as a matter of law, that no substantial and very real danger of a federal right being violated has been proved for the Lauderdale County Jail. We must reverse the district court's order because the evidence will not sustain it.

The district court order is REVERSED and the case is REMANDED with instructions to terminate the 1982 injunction.

REVERSED and REMANDED.

---

[6]By the way, a class-action lawsuit is pending in Montgomery County Circuit Court addressing jail issues such as overcrowding. The certified class consists of "all counties and sheriffs in the State of Alabama which do not currently benefit from court orders enjoining [the Department of Corrections] from retaining state inmates in county jails." Therefore, dissolving the injunction will let Alabama deal with its many prison and jail crowding issues in one lawsuit, rather than confront multiple—and potentially conflicting—district court orders. *See generally Chairs v. Burgess,* 143 F.3d 1432, 1438 (11th Cir.1998) (noting existence and significance of potentially conflicting consent decrees regulating Alabama prisons). And, the same state lawsuit will allow the County to litigate without the constraints imposed by the PLRA. The existence of this state court litigation is, however, immaterial to today's result.