**Randall BERWANGER, et al., Plaintiffs–Appellants,**

v.

**Jack L. COTTEY, et al., Defendants– Appellees.**

**United States of America, Intervenor.**

**No. 98–3107.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1999.

Decided May 6, 1999.

Kenneth J. Falk (argued), Indianapolis, IN, for Plaintiffs–Appellants.

James P. Moloy (argued), Dann, Pecar, Newman & Kleiman, Indianapolis, IN, for Defendants–Appellees.

Barbara L. Herwig, Robert M. Loeb (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for Intervenor–Appellee.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ Until recently Marion County Jail was subject to a federal injunction that establishes a maximum population. Orders entered in this long-running case, which began in 1972, regulate the Jail in many ways, but only the maximum-population features are at issue. These act as "prisoner release orders" for purposes of the Prison Litigation Reform Act, because, when the Jail is at the capacity set by the judge, it must release one prisoner for every new inmate it receives. In July 1997 the Jail asked the court to lift the population control so that it could house an additional 160 inmates by installing bunk beds. To the extent this request was based on 18 U.S.C. § 3626(a)(3), which establishes special requirements for prisoner release orders, it was unfounded. The orders in question long predate § 3626, which was enacted with the rest of the PLRA on April 26, 1996, and subsection (a)(3) begins: "[N]o court shall *enter* a prisoner release order unless ...". The district court did not "enter" any order in violation of the PLRA. But subsections (b) and (e), which deal with the termination of relief, do apply. Here are the important provisions:

(b) *Termination of relief.*

    (1) *Termination of prospective relief.*

        (A) In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener—

        (i) 2 years after the date the court granted or approved the prospective relief;

(ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or

(iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

(B) Nothing in this section shall prevent the parties from agreeing to terminate or modify relief before the relief is terminated under subparagraph (A).

(2) *Immediate termination of prospective relief.* In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

(3) *Limitation.* Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

. . .

(e) *Procedure for motions affecting prospective relief.*

(1) *Generally.* The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions. Mandamus shall lie to remedy any failure to issue a prompt ruling on such a motion.

(2) *Automatic stay.* Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period—

(A) (i) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); or
(ii) beginning on the 180th day after such motion is filed, in the case of a motion made under any other law; and
(B) ending on the date the court enters a final order ruling on the motion.

(3) *Postponement of automatic stay.* The court may postpone the effective date of an automatic stay specified in subsection (e)(2)(A) for not more than 60 days for good cause. No postponement shall be permissible because of general congestion of the court's calendar.

The Jail's motion was filed on July 21, 1997. Subsection (e)(2) provided for an "automatic stay" as of August 20, but on August 19 the district court entered a temporary restraining order against any stay or suspension of the existing orders governing the Jail. The court did not give a reason. Ten days later, the district court enjoined the operation of subsection (b)(2), on constitutional grounds, and equally without elaboration. At this point proceedings came to a halt. The court did not rule on the request for termination of the injunction. Plaintiffs asked for a hearing so that they could show under subsection (b)(3) "that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." The district court ignored all requests. It neither held a hearing nor made any findings on the existing record. The direction in § 3626(e)(1) that the court act "promptly" went by the boards.

After a year passed without movement in the district court, the Jail took two additional steps: it filed a motion seeking termination of the decree under subsection (b)(1)(A)(iii) on the ground that more than two years had elapsed since the PLRA's enactment; and it sought mandamus under subsection (e)(1) to enforce the prompt-ruling requirement. Before we could decide whether to issue a writ, the district court entered an order terminating "all prisoner release orders heretofore entered in this matter and identified in Defendants' Motion To Terminate filed on July 21, 1997". The district court did not give any reason beyond a citation to § 3626(b)(1)(A)(iii), and to this day it has not acted on plaintiffs' request for findings under subsection (b)(3) that would permit continuation of the relief. The Jail promptly installed 160 new beds. Contending that § 3626(b)(1)(A)(iii) is unconstitutional if read to require termination of prospective relief without an opportunity to support the decree under § 3626(b)(3), plaintiffs have appealed. The United States, which intervened to defend the constitutionality of § 3626(b)(1)(A)(iii), agrees with plaintiffs that the district court erred by disregarding § 3626(b)(3) and urges us to remand for further proceedings.

■ We think that the arguments pro and con § 3626(b)(1)(A)(iii) are misdirected, because that subsection does not require (or even authorize) the termination of injunctions. Subsection (b)(1)(A) says that "relief shall be terminable" on a party's motion, but "shall be terminable" does not mean "the district court must terminate." Subsections (b) and (e) must be read together; each provides context for the other. What subsection (b)(1) does is identify a class of cases that are *eligible* for termination: that is, cases in which a district court must entertain motions to terminate prospective relief. If two years have elapsed since the decree was entered (subsection (b)(1)(A)(i)) or the PLRA was enacted (subsection (b)(1)(A)(iii)), or one

year has passed since the last time the judge declined to terminate relief (subsection (b)(1)(A)(ii)), then any party is entitled to file a motion seeking termination. A motion properly filed under subsection (b)(1) leads to "immediate termination" under subsection (b)(2) unless the judge makes the termination-avoiding findings specified in subsection (b)(3). Subsection (e)(1) enforces the "immediacy" obligation by requiring prompt decision, and subsection (e)(2) backs up subsection (e)(1) by saying that if the judge sits on his hands, then the injunction is automatically stayed after 30 days of inaction. In another decision issued contemporaneously, this court holds the time limit in subsection (e)(2) unconstitutional, see *French v. Duckworth*, No. 97–3075, so as a practical matter the judge has more than 30 (or 90) days to act, but decision still must come as promptly as possible under the circumstances. And the essential decision is one under subsections (b)(2) and (b)(3): the decree must be terminated promptly unless "prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."

■ Subsection (b)(2), and not subsection (b)(1)(A) or any of its subdivisions, thus provides the authority for "termination." Treating subsection (b)(1)(A) as doing no more than setting a period during which litigants cannot ask the judge to terminate a decree—at least, not without mutual consent, see § 3626(b)(1)(B)—avoids any possible constitutional infirmities. Subsection (b)(1)(A) acts like the certification-year and contract-bar doctrines in labor law, by making the status quo incontestable for a specified period. Otherwise district courts could be peppered with endless motions, all of which would activate the special rules of subsection (e), and stability would be impossible.

Subsection (b)(2) does the heavy lifting. This is the subsection the district court enjoined as unconstitutional. Since then, however, appellate courts across the country have sustained subsection (b)(2) against all manner of constitutional challenges. See *Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649 (1st Cir.1997); *Benjamin v. Jacobson*, 172 F.3d 144 (2d Cir.1999) (en banc); *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178 (3d Cir. 1999); *Hadix v. Johnson*, 133 F.3d 940 (6th Cir.1998); *Gavin v. Branstad*, 122 F.3d 1081 (8th Cir.1997); *Dougan v. Singletary*, 129 F.3d 1424 (11th Cir.1997). See also *Plyler v. Moore*, 100 F.3d 365, 370–72 (4th Cir.1996). The only contrary decision is *Taylor v. United States*, 143 F.3d 1178 (9th Cir.1998), which has been withdrawn on the grant of rehearing en banc, 158 F.3d 1059 (9th Cir.1998). (*Taylor* was argued en banc on January 21, 1999, and is under advisement.) These decisions point out that the PLRA establishes new criteria for relief, a constitutionally sufficient ground for reopening the prospective component of a judgment. See *Robertson v. Seattle Audubon Society*, 503 U.S. 429, 437–39, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992); *System Federation No. 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961). Subsection (b)(2), in connection with subsections (b)(1) and (e), also reinforces the requirement, which exists independently of the PLRA, that courts permit state and local governments to regain control of their institutions once the injunction has achieved its purpose of correcting violations of federal law. See, e.g., *Missouri v. Jenkins*, 515 U.S. 70, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995); *Freeman v. Pitts*, 503 U.S. 467, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992); *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); *Evans v. Chicago*, 10 F.3d 474 (7th Cir.1993) (en banc); *David B. v. McDonald*, 156 F.3d 780 (7th Cir.1998).

Although the word "immediate" in subsection (b)(2) could be taken out of context and read as "instant," the rest of § 3626 shows that the two words differ. The second clause of subsection (b)(2) says that termination occurs only "in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." A judge needs time to decide whether to make that finding. Subsection (b)(3) adds that "relief *shall not terminate* if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." (Emphasis added.) Recall that subsection (e)(1) calls for a "prompt" rather than an "instant" decision. By letting more than a year pass without action, and then terminating the decree without making any findings under subsection (b)(2) or (b)(3), the district court erred. Resolution of the issues posed by these provisions is a precondition to exercise of the termination power under subsection (b)(2).

Given the holding in *French*, plaintiffs could ask to have the decree reinstated, the new bunks removed, and their occupants released pending resolution of the issues posed by subsection (b)(3). But plaintiffs have not asked for this. They say that they will be satisfied with a swift resolution of their contention that relief continues to be appropriate under the criteria of subsection (b)(3). They are entitled to that much—and, following the model of subsection (e)(2) as a matter of prudent judicial administration, they are entitled to that decision within 30 days. Cf. *Benjamin*, 172 F.3d 144, 166 (restart-

ing the clock under subsection (e)(2) from the date of the appellate mandate).

 To say that the parties are entitled to a *decision* is not necessarily to say that more evidence must be received. The district court had appointed a monitor to oversee compliance with the decree, and perhaps information in the monitor's possession, supplemented by documents the parties submit, will show that the statutory criteria have (or have not) been satisfied. Only if there are disputed issues of material fact must the court hold a new hearing and receive testimony. What the statute requires, however, is that the district court make specific findings addressing the criteria of subsections (b)(2) and (b)(3), and do this with the utmost expedition in light of the unjustified delay that has already occurred.

If the district judge's schedule does not allow him to receive any necessary evidence and reach a decision within 30 days, he should promptly inform the chief judge of the district court so that the case may be transferred to another judge whose calendar permits dispatch. The case is remanded to the district court for proceedings consistent with the PLRA and this opinion. So that a decision that should have been made in 1997 will not be delayed further, the mandate will issue today. Any further appellate proceedings will return to this panel, see Operating Procedure 6(b); briefing and decision will be expedited.