[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 24, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-11125

_____

D.C. Docket No. 84-00313-5-CWH

BUDDY CASON, IKKI CONTRERAS, et al.,

Plaintiffs-Appellees-
Cross-Appellants,

DAVID TONY NEISLER, GERALD WENDELL SPIVEY, et al.,

Plaintiff-Appellees,

versus

JIM SECKINGER, THOMAS JONES, et al.,

Defendants-Appellants-
Cross-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**(October 24, 2000)**

Before CARNES and BARKETT, Circuit Judges, and POLLAK[*], District Judge.

---

[*] Honorable Louis H. Pollak, U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

CARNES, Circuit Judge:

This appeal stems from a lawsuit that was filed sixteen years ago on behalf of a class consisting of all male and female inmates ("plaintiffs") presently or in the future housed by the Georgia Department of Corrections at the Middle Georgia Correctional Complex. The lawsuit was brought against the Georgia Department of Corrections and certain officials ("defendants"), and it sought injunctive relief to remedy numerous alleged Constitutional violations. The parties differences were resolved by entry of a series of consent decrees between May 10, 1990 and March 29, 1996.

On November 12, 1998, defendants filed a motion to vacate and terminate all remaining consent decrees pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. In opposition to the motion, plaintiffs requested an evidentiary hearing on the issue of whether there are current and ongoing violations of class members' federal rights, and they also urged the court to grant a motion they had filed in 1995 seeking leave to amend their complaint to add related claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 701 et seq. The district court granted the defendants' motion to terminate only insofar as it pertained to the enforcement of the consent decrees within the present suit, but denied their motion

2

to vacate the "substance" of the underlying decrees.[1] The district court also denied the plaintiffs' request for an evidentiary hearing as well as their motion to amend their complaint. For the reasons set forth below, we vacate that portion of the district court's order pertaining to termination of the consent decrees and remand with instructions to hold an evidentiary hearing in accordance with the requirements of the PLRA. We affirm that portion of the district court's order denying plaintiffs leave to amend their complaint.

## I. BACKGROUND

The underlying civil action seeking injunctive relief from allegedly unconstitutional prison conditions that existed in the Middle Georgia Correctional Complex was originally filed in 1984.[2] A class was certified consisting of all male

---

[1] All of the orders in this case were entered by a magistrate judge. Because the parties consented to have the magistrate judge act as the district court pursuant to 28 U.S.C. § 636(c), we will refer to the magistrate judge's actions as those of the district court.

[2] The lawsuit claimed that prison conditions were unconstitutional because, it was alleged, there was: (1) pervasive sexual abuse of female inmates by staff; (2) pervasive sexual harassment of female inmates by staff; (3) an inadequate classification system; (4) use of excessive force, physical violence, and verbal abuse; (5) the illegal use of stripping and restraints on mentally ill inmates; (6) violations of basic privacy rights and illegal stripping; (7) enforcement of existing orders; (8) inadequate staffing; (9) life-threatening structural and physical plant conditions; (10) deliberately indifferent medical, dental, and mental health care; (11) deficient food and food services; (12) inadequate access to the courts; (13) unlawful visitation, mail, and telephone practices; (14) inadequate fire safety; (15) inadequate occupational health and safety; (16) insufficient vocational and educational programs; (17) lack of exercise and recreation, and unjustified idleness; (18) lack of meaningful regulations on personal property; (19) abusive protective custody procedures; (20) unlawful racial and religious discrimination; (21) inadequate disciplinary and grievance procedures policies; (22)

and female inmates presently or in the future housed in the Middle Georgia

Correctional Complex.  The case was eventually resolved by the entry of a series of

consent decrees designed to remedy the alleged institutional deficiencies.  Of

primary importance to the issues on appeal are  fourteen consent decrees that were

entered  beginning in 1990 and ending in 1996.  Of those fourteen orders, three

contained provisions for automatic termination,  and for that reason are not at issue

in the present appeal.[3]  The remaining consent decrees did not contain any

provision for automatic termination.[4]

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), 18

U.S.C. § 3626.  The PLRA altered the landscape of prison reform litigation in two

---

overcrowding; (23) the adverse psychological effects of detention; and (24) inadequate mental
health therapy and counseling.

[3]  The consent orders containing automatic termination provisions included the December
12, 1995 order dealing with mental health, the January 22, 1996 order regarding medical care,
and the March 8, 1996 order regarding the physical plant and staffing.

[4]  The remaining consent decrees include orders pertaining to discipline and grievances
(entered May 10, 1990); safety/sanitation, food, use of force, classification, visitation, mail and
postage, and receipt of funds (entered August 29, 1990); Jane Doe victims/witnesses of sexual
abuse (entered March 11, 1992); provision of counseling to Jane Doe victims (entered March 15,
1993); physical restraints, seclusion, and stripping (entered February 1, 1994); investigation of
sexual contact, sexual harassment, and sexual abuse (entered November 22, 1994); permanent
population cap at Metro State Prison and psychiatric time to be provided at that prison (entered
March 10, 1995); training of employees and female inmates about sexual abuse, sexual contact,
and sexual harassment (entered June 23, 1995); psychiatric hours at Metro State prison (entered
October 3, 1995); and degree requirements for mental health counselors (entered March 29,
1996).  There was also an order for permanent injunctive relief entered March 7, 1994,
pertaining to sexual contact, sexual harassment, and sexual abuse.

4

primary respects. First, it prescribed limits on the scope of prospective relief that a court has the authority to enter, mandating that prospective relief will not be entered "unless the court finds that such relief is narrowly drawn, extends no further than necessary . . . and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

Second, the PLRA limits a court's authority to continue to enforce previously entered prospective relief in prison litigation reform cases. Section 3626(b)(1)(A) establishes specified time frames under which prospective relief is terminable upon motion of a party. Section 3626(b)(2) sets forth an additional ground for termination, providing that a defendant shall be entitled to immediate termination of any prospective relief that was entered without the required findings that "the relief is narrowly drawn, extends no further than necessary to correct the violation . . .and is the least intrusive means necessary to correct the violation ...." Id. Both subsections (b)(1)(A) and (b)(2) are limited by § 3626(b)(3), which provides that prospective relief shall not terminate if the court determines that the relief remains necessary to "correct a current and ongoing violation of [federal rights], extends no further than necessary to correct the violation ... and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." Id. § 3636(b)(3).

5

In 1998, the defendants moved pursuant to § 3626(b) of the PLRA for an order terminating and vacating all consent decrees that did not already contain provisions for automatic termination. The district court granted the motion in part, concluding that there was no "current and ongoing" constitutional violations sufficient to justify the continuation of the decrees under § 3626(b)(3). In reaching that conclusion, the district court denied plaintiffs' request for an evidentiary hearing. The court determined no evidentiary hearing was required on the issue of whether there were current and ongoing violations because the plaintiffs had not requested any additional injunctive relief in the two years preceding the defendants' motion, nor had they alleged any non-compliance with the existing decrees during that two-year period. According to the court, those two factors by themselves established that no current and ongoing violations existed, and for that reason no evidentiary hearing was necessary.

Acting pursuant to 18 U.S.C. § 3626(b)(1)(A)(iii),[5] the district court granted

the defendants' motion to terminate the consent decrees insofar as the motion

called for the termination of the underlying lawsuit. Nonetheless, expressing its

wish not "to destroy what it considers to be positive steps taken by the Department

in ensuring that its charges are properly looked after in accordance with

Constitutional requirements," the court denied the defendants' motion insofar as it

requested that the court vacate the substantive provisions of the consent decrees.

The court was motivated to leave the substantive provisions alone by its desire to

allow courts in future cases involving these same defendants to be able to consider

the substance of the prior consent decrees. Perhaps recognizing the problematic

nature of what it was doing, the court attempted to explain that, "[t]he purpose of

this order is simply to end this proceeding which has been pending in various

forms since 1984, nearly fifteen years, keeping intact the <u>substantive</u> provisions of

all orders and injunctions which have not expired by their own terms." (emphasis

---

[5] Section (b)(1)(A) provides:

> (1) Termination of prospective relief. - (A) In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener -
>> (i) 2 years after the date the court granted or approved the prospective relief;
>> (ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or
>> (iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

in original).  The court emphasized that it did not intend to permit the continued enforcement of the consent decrees, and to that end vacated and terminated "all provisions in the various orders/injunctions entered herein dealing with enforcement by way of contempt or otherwise...." (emphasis in original).

The district court also denied plaintiffs' motion to amend their complaint to add claims under the ADA and the Rehabilitation Act.  Counsel for plaintiffs originally filed the motion in 1995, more than ten years after the lawsuit was initiated.  The court delayed ruling on the motion until after the Supreme Court ruled on the application of the ADA to state prison facilities.  See generally Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 118 S. Ct. 1952 (1998).  The district court subsequently denied the motion to amend on the grounds that adding a new sub-class to the litigation at such a late stage would only serve to prolong the already protracted litigation.  The court observed that plaintiffs could present any ADA-related claims in a new lawsuit, and that requiring them to do so would in no way adversely impact their ability to prosecute such a claim.

The defendants appealed the denial of their motion to terminate the consent decrees in their entirety, and the plaintiffs cross-appealed the denial of their request for an evidentiary hearing and the denial of their motion to amend.

## II. DISCUSSION

8

The provision of the PLRA pursuant to which the district court determined the decrees to be terminable mandates that, upon motion of a party, prospective relief that was ordered prior to the date of the PLRA's enactment shall be terminable two years after the effective date of the enactment, unless certain specific findings are made. See 18 U.S.C. § 3626(b)(1)(A)(iii) and (b)(3). Here, there is no dispute that the relief embodied in the consent decrees was ordered prior to the effective date of the PLRA's enactment and that the defendants' motion was filed more than two years after that date. Thus, the relief is terminable unless the limiting provisions of 3626(b)(3) prohibit termination. Before we can determine whether the issues involving the extent of the district court's termination of the consent decrees are presented, we must decide if termination was prohibited under 3626(b)(3) ("Prospective relief shall not terminate if ...."). We turn to that issue now, and to the plaintiffs' contention that they were wrongly denied an evidentiary hearing on it.

## A. DENIAL OF THE EVIDENTIARY HEARING

We review the district court's denial of a request for an evidentiary hearing for an abuse of discretion. See Loyd v. Alabama Dep't of Corrections, 176 F.3d 1336, 1339 (11th Cir. 1999).

## 1. The Requirement of an Evidentiary Hearing

Section 3626(b)(3) provides:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3).

The defendants argue that an evidentiary hearing is not required under § 3626(b)(3) where the plaintiffs fail to allege any specific, continuing institution-wide violations of a federal right. Here, for more than two years there had been no formal allegations that the defendants had violated any constitutional rights of the plaintiffs. That alone, the district court concluded, ruled out any "current and ongoing" violations within the meaning of the PLRA and made an evidentiary hearing unnecessary. The defendants, of course, agree.

In support of this position, the defendants cite <u>Berwanger v. Cottey</u>, 178 F.3d 834 (7th Cir. 1999). In <u>Berwanger</u>, the district court had appointed a monitor to oversee compliance with the consent decrees. <u>See</u> <u>id.</u> at 840. The Seventh Circuit suggested that if there were current and ongoing violations, the court-appointed monitor likely would have been aware of it. <u>Id.</u> The court suggested further that if the information in the monitor's possession, together with any

10

documents submitted by the parties, was not sufficient to create a disputed issue of fact as to the existence of a violation, then the parties may not be entitled to introduce more evidence on the issue. Id. ("Only if there are disputed issues of material fact must the court hold a new hearing and receive testimony." ).

There are two problems with defendants' reliance on Berwanger. First, it is not at all clear that the factual and procedural circumstances in that case match those in this case. It is unclear that the plaintiffs in Berwanger alleged that specific violations of federal rights existed at the time of the termination decision, as the plaintiffs in this case did. In their response to the defendants' motion to vacate, these plaintiffs alleged several specific violations of the federal rights of the class members.[6] Also, the plaintiffs assert, without contradiction by the defendants, that at a status conference held shortly before the termination decision they offered the district court a series of class-member affidavits that, they contend, would have demonstrated the existence of current and ongoing violations, but the district court refused to accept them.

Another problem with defendants' reliance upon the Seventh Circuit's Berwanger decision is this Court's own decision in Loyd v. Alabama Dep't of

_____

[6] The alleged violations included sexual harassment of female inmates by prison guards and visitors, sexual assault of a female inmate by a prison guard, sexual assault by a fellow inmate, and institutional reluctance to investigate these claims or to provide therapy to the victims, as required under the consent decrees.

11

Corrections, 176 F.3d 1336 (11th Cir. 1999). In that decision, we held that it was an abuse of discretion for the district court to refuse to grant an evidentiary hearing on the issue of whether the consent decrees satisfied the requirements of § 3626(b)(3), including whether there was a current and ongoing violation. See id. at 1342. In contrast to what the Seventh Circuit did in Berwanger, in Loyd we did not require plaintiffs who are seeking an evidentiary hearing to first demonstrate the existence of a material question of fact. Instead, we seemed to suggest that a hearing would be required in all such cases, stating "[i]t would read all meaning out of [§ 3626(b)(3)] to force the party opposing termination to show that the consent decree meets the requirements of § 3626(b)(3) and then not provide that party with the opportunity to present evidence on that point." Id.

There was in Loyd, as there had been in Berwanger, a court-appointed monitor who had filed reports (up until two months prior to the motion to vacate in Loyd), and those reports apparently did not indicate the existence of any current and ongoing federal law violations. Id. Despite the existence of the monitor's written reports, we held that an evidentiary hearing was required, stating, "[t]he party opposing termination must be given the opportunity to challenge or supplement the findings of the monitor and to present evidence concerning the

scope of the challenged relief and whether there are current and ongoing violations of federal rights in the prison." Id.

In the present case, the plaintiffs were not afforded an opportunity to prove that there are "current and ongoing" violations of class members' federal rights. Therefore, Loyd compels us to hold that it was an abuse of discretion for the district court to refuse to grant plaintiffs the evidentiary hearing they requested on that issue. It necessarily follows that the district court's termination (or partial termination) of the consent decrees was premature at best. Accordingly, we will vacate that portion of the district court's order terminating the decrees and remand the case with instructions that an evidentiary hearing be conducted on the § 3626(b)(3) issues.

In conducting the evidentiary hearing the district court will be called upon to interpret and apply the "current and ongoing" violation component of § 3626(b)(3). Because there is substantial disagreement between the parties about the meaning of that component, and because the district court appears to have misapprehended the nature of the § 3626(b)(3) inquiries, we write further in order to provide the district court and the parties with specific guidance on those subjects.

## 2. The Scope of the Required Evidentiary Hearing

If a party has properly moved for termination of prospective relief under either § 3626(b)(1)(A) or § 3626(b)(2), the court must determine whether such relief should be continued under § 3626(b)(3).  That subsection provides that prospective relief shall not terminate if  the court makes written findings on the record that: (1) the prospective relief remains necessary to correct a current and ongoing violation of a federal right, (2) the relief extends no further than necessary to correct the violation, (3) the relief is narrowly drawn, and (4) the relief is the least intrusive means to correct the violation.  See 18 U.S.C. § 3626(b)(3).

### a. The Meaning of "Current and Ongoing"

The plaintiffs contend that a "current and ongoing" violation of federal rights, as that term is used in § 3626(b)(3), includes more than just a currently existing violation.  They ask us to adopt a standard of "current and ongoing" that is broad enough to include the persistence of  practices that have led to violations of federal law in the past, even though no such violations currently exist.  They say that if the institutional policies that led to violations in the past are still in existence and pose a danger that future violations will occur, then the court should find that the "current and ongoing" violation standard is met.

We discussed the scope of the "current and ongoing" standard in Parrish v. Alabama Dept. of Corrections, 156 F.3d 1128 (11th Cir. 1998). There we took note of the issue about whether "current and ongoing" means that a violation must exist "right now" or instead means a "substantial and very real danger that a violation of rights will follow the termination of the injunction." Id. at 1129. However, it was not necessary for us to decide the issue in Parrish because, under either standard, the plaintiff could not show a "current and ongoing" violation in that case. Id. That is not the case here where we are remanding for an evidentiary hearing in order to give the plaintiffs an opportunity to show a "current and ongoing" violation, so we will now resolve the issue of what that entails.

As we observed in Parrish, the phrase "current and ongoing" was originally enacted as "current or ongoing." Id. at n.3. In 1997 Congress amended the phrase to substitute "and" for "or." See Department of Justice Appropriations Act, Pub.L. No. 105-119, § 123(a)(2), 111 Stat. 2440, 2470 (1997). The legislative history of the enactment, which we did not have occasion to discuss in Parrish, clearly shows that Congress intended "current and ongoing" to mean a presently existing violation, not a potential, or even likely, future violation. The conference report explaining the amendment makes this clear, stating that the change to "current and ongoing" (emphasis added):

15

corrects the confusing use of the word "or" to describe the limited circumstances when a court may continue prospective relief in prison conditions litigation to make clear that a constitutional violation must be "current and ongoing". These dual requirements are necessary to ensure that court orders do not remain in place on the basis of a claim that a current condition that does not violate a prisoners' Federal rights nevertheless requires a court decree to address it, because the condition is somehow traceable to a prior policy that did violate Federal rights, or that government officials are "poised" to resume a prior violation of federal rights.

H.R. Conf. Rep. No. 105-405, at 133 (1997). Accordingly, we hold that a "current and ongoing" violation is a violation that exists at the time the district court conducts the § 3626(b)(3) inquiry, and not a potential future violation. On remand, the district court should hold an evidentiary hearing to allow both parties to present evidence on whether there are any currently existing violations of class members' federal rights within the meaning of § 3626(b)(3). In accordance with that provision, if the district court concludes that a "current and ongoing" violation does exist, it must make written findings on the record about whether the prospective relief aimed at that violation remains necessary to correct it. The court will also need to address the other components of § 3626(b)(3).[7]

---

[7]Of course, if the court finds no current and ongoing violation, the prospective relief must be terminated.

16

*b. The Required Need-Narrowness-Intrusiveness Findings*

If the district court determines that there are current and ongoing violations sufficient to support the continuation of the prospective relief, the court must then determine whether the scope of the existing relief comports with the other findings required by § 3626(b)(3). Even where there is a current and ongoing violation, prospective relief must be terminated unless the district court makes written findings on the record that the relief extends no further than necessary to correct the violation, that the relief is narrowly drawn, and that the relief is the least intrusive means to correct the violation (hereinafter, the "need-narrowness-intrusiveness" findings). See 18 U.S.C. § 3626(b)(3).

As to those factors, in this case the district court stated only that the "the court specifically finds, based on the content of the orders and upon the philosophy of the undersigned which existed prior to the enactment of the PLRA, that the relief set forth [in the consent decrees] extends no further than necessary to correct the . . . violations dealt with by the parties . . . at the time the orders were consented to and/or entered." (emphasis in original). This statement indicates that the district court misunderstood both the nature and extent of the analysis required by § 3626(b)(3).

With regards to the nature of the § 3626(b)(3) inquiry, the district court's statement indicates that it thought the question was whether the relief contained in the orders extended no further then necessary "to correct the [alleged] violations dealt with by the parties and the court at the time the orders were consented to and/or entered." (emphasis added). That is not the (b)(3) question. Instead, if there is a "current and ongoing" violation, the question becomes whether the prospective relief meets the need-narrowness-intrusiveness requirements at the time of the court's inquiry in response to the motion to terminate. The court must make new findings about whether the relief currently complies with the need-narrowness-intrusiveness requirements, given the nature of the current violations. It is not enough under § 3626(b)(3) that the orders, when entered, were sufficiently narrow considering the violations that existed at that time.

Regarding the extent of the analysis, the district court's summary conclusion that the consent decrees "extend[ed] no further then necessary to correct the . . . violations" was seriously deficient. We read § 3626(b)(3) as requiring particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decrees satisfies the need-narrowness-intrusiveness criteria, given the nature of the current and ongoing violation. It is not enough to simply state in conclusory fashion that the requirements of the consent decrees

18

satisfy those criteria. Particularized findings, analysis, and explanations should be made as to the application of each criteria to each requirement imposed by the consent decrees.

On remand, rather then summarily concluding that all of the consent decrees satisfy all of the requirements of § 3626(b)(3), the district court should engage in a specific, provision-by-provision examination of the consent decrees, measuring each requirement against the statutory criteria. The court must determine, and enter findings about, whether each requirement extends no further than necessary to correct a current and ongoing violation of a federal right, is narrowly drawn, and is the least intrusive means of correcting that violation. Only if the court makes written findings on the record that the relief satisfies the above need-narrowness-intrusive standards can the prospective relief be continued.[8]

## B. THE DISTRICT COURT'S PURPORTED "TERMINATION" OF THE CONSENT DECREES

In its order, the district court stated that it was terminating the lawsuit, but leaving the substantive provisions of the consent decrees intact. With respect to the termination of the lawsuit, the court stated that it "contemplates and directs that

---

[8]Of course, we do not mean to suggest that the district court must conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute. The parties are free to make any concessions or enter into any stipulations they deem appropriate.

19

all complaints regarding issues dealt with herein shall henceforth be considered in new lawsuits if such become necessary . . . . To that end, all provisions in the various orders/injunctions entered herein dealing with enforcement by way of contempt or otherwise, or requiring or permitting enforcement action by class counsel within the framework of this case are VACATED and TERMINATED." (emphasis in original). With respect to preserving the substantive provisions of the consent decrees, the court stated, "[i]f orders or injunctions entered in [this case] have not been complied with, it will be up to this court or any other court having jurisdiction over the issue at hand to determine whether new operating procedures, etc. pass constitutional muster. Orders/injunctions herein previously entered may be taken into consideration, if applicable, as may the fact that this court does not wish to destroy what it considers to be positive steps taken by the [Defendants] . . . ." Thus, while the court intended to terminate the enforcement provisions of the consent decrees, it also intended that the decrees would continue to have some effect although it is unclear exactly what effect.

We have considerable doubt that the district court's partial termination of the prospective relief went far enough to comply with the PLRA.[9] It appears as

_____

[9] At oral argument counsel for plaintiffs conceded that the district court's approach was not proper. When that counsel was asked how he would have drafted a termination order in this case, he directed us to four orders that had been entered by another district court in other prison litigation reform cases, and told us that they were good examples of how it should be done.

20

though the court was interpreting § 3626(b) as operating to limit the jurisdictional authority of a court to enforce the decrees instead of requiring the actual termination of the decrees. If so, we have previously rejected that very interpretation of the PLRA. See Dougan v. Singletary, 129 F.3d 1424, 1426 n.4 (11th Cir. 1997). However, we need not address that issue any further now because we are remanding this case for an evidentiary hearing and findings on the issue of whether there are any "current and ongoing" violations and, if so, on the need-narrowness-intrusiveness factors. Only after the district court holds the evidentiary hearing and enters findings will we know whether any of the decrees are due to be "terminated," and only then will any issues about what termination entails be presented. Also it may be that any issues involving the scope of termination are shaped and clarified by the district court's findings. For these reasons, we leave any such issues for another day.

## C. DENIAL OF PLAINTIFFS' MOTION TO AMEND

The plaintiffs cross-appeal the denial of their motion to amend the complaint to include certain ADA and Rehabilitation Act claims and to certify a sub-class of

---

Three of those four orders said that the prior orders were "hereby vacated, dissolved, and terminated," while the fourth one said that the prior orders were "hereby vacated and terminated and the action is dismissed."

21

individuals defined as disabled under the ADA and handicapped under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. The district court denied the motion on the grounds that the addition of a new sub-class more than ten years after the case was initially filed would needlessly prolong the already protracted litigation. The court also noted that the plaintiffs could present any such claims in a new lawsuit if they wished to pursue them.

The plaintiffs argue that the district court abused its discretion in denying their motion to amend. The plaintiffs stress that, although some fifteen years have elapsed since this lawsuit was initiated, they originally sought leave to amend the complaint in 1995, more than four-and-one-half years ago. The district court delayed ruling on the motion to amend until after the Supreme Court decided whether the ADA was applicable to state prison systems.[10] The plaintiffs argue that the district court's delay in ruling on the motion was not their fault, and should not prejudice their efforts to bring the additional claims. They argue further that the parties and the court have acted since 1992 as though the substantive issues that the ADA and Rehabilitation Act raise were already part of the case, particularly

---

[10] The Supreme Court ultimately ruled that the ADA did apply to state prisons in Pennsylvania Dep't. of Corrections v. Yeskey, 118 S. Ct. 1952, 524 U.S. 206 (1998).

22

with respect to mental health care and conditions at geriatric and disabled inmate facilities.

Federal Rule of Civil Procedure 15 provides, in pertinent part, that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). While the plaintiffs stress that leave to amend "shall be freely given," we stress that our review of the district court's denial of leave to amend is limited to deciding whether there has been an abuse of discretion, which means we give that court considerably more leeway than if we were reviewing its decision de novo. See In re Rasbury, 24 F.3d 159, 168 (11th Cir. 1994). The question before this Court is not whether we would have granted leave to amend under the "freely given" standard of Rule 15, but whether the district court abused its discretion by not granting it under that standard and in the circumstances of this case. As we have observed before, when we review only for abuse of discretion the district court has "a range of choice ...so long as that choice does not constitute a clear error of judgment." Id. (citation and quotation omitted).

Even if we focus, as the plaintiffs argue that we should, on the date on which plaintiffs initially filed their motion to amend rather then on the date when the district court ultimately ruled on it, we cannot say that it the district court's denial

23

of the motion constituted a clear error of judgment. The plaintiffs sought to amend the complaint nearly eleven-and-one-half years after it was filed.  Despite their protestations that the ADA did not exist when they filed the suit, it had existed for nearly five years before they filed leave to amend, and the Rehabilitation Act had been in existence since before  they filed the lawsuit.   Finally, as the district court noted, if plaintiffs wish to pursue any claims they might have under the ADA and the Rehabilitation Act, they will not be unduly burdened by having to file a new lawsuit to do so.

### III. CONCLUSION

We AFFIRM that portion of the district court's order denying plaintiffs leave to amend their complaint.

We VACATE that portion of the district court's order denying an evidentiary hearing and partially terminating the consent decrees, and we REMAND the case for further proceedings consistent with this opinion.