**SAENGER ORGANIZATION, INC.,**
**Plaintiff and Counter–**
**Defendant,**

v.

**NATIONWIDE INSURANCE LICENSING ASSOCIATES, INC., Commonwealth Licensing Group, and, Lawrence R. Durkin, Defendants and Counter–Claimants.**

**Civ. A. No. 94–11357–NG.**

United States District Court,
D. Massachusetts.

Oct. 3, 1994.

---

---

Stephen J. Kenney, Kenney & Maciolek, Medway, MA, for Saenger Organization, Inc.

Ernest B. Murphy, Murphy & O'Connell, Boston, MA, for Nationwide Ins. Licensing Associates, Inc., Com. Licensing Group, Lawrence R. Durkin.

## MEMORANDUM AND DECISION

GERTNER, District Judge.

## I. INTRODUCTION:

The plaintiff, The Saenger Organization, Inc. (hereinafter "TSO"), commenced this proceeding alleging a copyright infringement, unfair competition, and a violation of M.G.L. c. 93A. In this motion, Saenger seeks pre-

liminary injunctive relief to enjoin the defendants from offering the alleged copyrighted materials to the public in any way while this suit is pending. **For the reasons described below, preliminary injunctive relief is GRANTED.**

The defendant, Lawrence Durkin (hereinafter "Durkin"), was employed by TSO from July 15, 1986 to September 15, 1992. During Durkin's employment, he contributed to the production of two texts: *Life, Accident and Health Licensing Text,* and *Property/Casualty Licensing Text* which TSO claims to have copyrighted. In late 1993 after leaving TSO, Durkin began marketing his own line of insurance training manuals, which are concededly similar to the TSO line of manuals in many respects.

Durkin claims that he was promised co-authorship and co-registrant status in the copyrights in question. When TSO did not pay him his equal share of the profits from the manuals, Durkin claims he was relieved of an obligation to honor the copyrights of TSO.

## II. *ANALYSIS:*

■ A district court may grant a preliminary injunction when: 1) the plaintiff has exhibited a likelihood of success on the merits; 2) the plaintiff will suffer irreparable injury if the injunction is not granted; 3) the public interest will not be adversely affected by the granting of the injunction; and 4) such injury outweighs any harm which granting the injunction would inflict on the defendant. *Keds Corp. v. Renee Intern. Trading Corp.,* 888 F.2d 215 (1st Cir.1989) citing *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

### A. *The Saenger Organization is Likely to Succeed on the Merits because (1) it Possesses a Valid Copyright, (2) Durkin had Access to the Copyrighted Materials, and (3) Durkin Created Substantially Similar Materials.*

■ In order to succeed in a copyright infringement suit a party must show: (1)

ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. *Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir.1988).

### 1. *Saenger has a Valid Copyright.*

■ TSO has submitted copies of certificates of registration for both *Property/Casualty Licensing* and *Life, Accident & Health Licensing.* Both works were first published in July of 1986 and both were registered in the early months of 1987. Thus, TSO satisfied the requirements of 17 U.S.C. § 410(c) that the registration be made within five years after the first publication. The certificates constitute prima facie evidence of the validity of these copyrights.[1]

■ Durkin argues that the first set of forms sent to the copyright office for approval which lists him as a "co-author" reflect the true intentions of the parties. On these forms, Mr. Saenger and Mr. Durkin are each listed as a "co-author of entire text." However, following both of these names on the form a "Yes" box was checked in answer to the question: "[W]as this contribution to the work a 'work made for hire'?" In portion "2" of the form where the author or authors are listed there is the following note: "[U]nder the law, the 'author' of a 'work made for hire' is generally the employer, not the employee ... For any part of this work that was 'made for hire' check 'Yes' in the space provided." Given the way the form was filled out, listing *both* individuals as contributing to a "work made for hire," it seems clear the parties agreed the texts belonged TSO.

Under § 101 a "work made for hire" is defined as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C.A. § 101. Section 201(b) elaborates:

> In the case of a work made for hire, the employer or other person for whom the

1. Under section 410(c) of the United States Code, "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C.A. § 410(c).

work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a *written instrument signed by them*, owns all of the rights comprised in the copyright. 17 U.S.C.A. § 201(b) (emphasis added).

After being notified by the copyright office that the appropriate way to register these texts would be to list TSO as the author, the forms were resubmitted and the amended forms were certified. *See* Attachment to Affidavit of Bruce W. Saenger. *See also* Exhibit D, Defendants' Memorandum in Opposition.

In addition to the copyright form, which indicates that Durkin agreed to write the texts on a "work for hire" basis, Durkin admits that in his capacity as Vice President for TSO he agreed to "create and develop them [the texts], in addition to maintaining and expanding them, and Saenger would market them." Thus, there is substantial evidence that Durkin was acting within the scope of his employment when he wrote the texts and that the copyrights are appropriately registered to TSO.

### 2. *Durkin had Access to the Copyrighted Texts and Published Materials that were Substantially Similar to the Copyrighted Texts.*

Generally, copying is established by "showing that the defendant had access to the copyrighted work and that the offending and copyrighted articles are substantially similar." *Concrete Machinery Company, Inc.*, 843 F.2d 600, 606. The parties do not dispute that Durkin had access to both the *Life, Accident and Health Licensing Text* and the *Property/Casualty Licensing Text*. Durkin was employed by TSO from July 15, 1986 to September 15, 1992 during which time he "worked on, and assisted" in developing these texts. Durkin admits to consulting with an attorney in March of 1993, prior to his departure from TSO, regarding the use of these texts in his own business venture. Following this consultation, Durkin made a conscious decision to "use the materials myself in a new business." There is no question that Durkin had access to the materials and

took the materials with the intention of using them to start his own business.

Moreover, the parties do not dispute that the Durkin materials are substantially similar to the copyrighted texts. Saenger alleges that "a vast majority of the Nationwide licensing text was copied from The Saenger Organization, Inc.'s licensing text verbatim." In response, Durkin admits that "much of the language in 'my' manuals is the same as in TSO's manuals."

Plainly, TSO has met one prong of the preliminary injunction test, namely, that it is likely to succeed on the merits of the infringement claim.

### B. *TSO has Established Irreparable Harm.*

In the field of copyright litigation, a showing of a likelihood of success on the merits simultaneously satisfies the irreparable injury requirement. *Concrete Machinery Company, Inc.*, 843 F.2d 600, 611 citing *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir.1986). Thus, because TSO has established a likelihood of success on the merits of their claim, the Court can presume irreparable harm.

#### 1. *The Public Interest.*

Proof of a likely success on the merits has important implications concerning the public policy prong of the preliminary injunction test. *Concrete Machinery Company, Inc.*, 843 F.2d 600, 611 (stating that public policy "rarely is a genuine issue if the copyright owner has established a likelihood of success"); *See Also Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir.1983) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright, it is virtually axiomatic that the public interest can only be served by upholding copyright protection"). Indeed, all public policy issues militate in favor of upholding copyright protection.

#### 2. *Balancing the Harms.*

Finally, this Court need only give minimal consideration to the hardship on the defendant arising from his loss of profits as

one court noted: "[W]e see little reason why an entity should be allowed to establish and continue an enterprise based solely on what is in all likelihood copyright infringement." *Concrete Machinery Company, Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 Given that TSO has demonstrated a strong likelihood of success on the merits and has demonstrated a significant burden, and given that there are no legitimate countervailing concerns for defendant, the balance of the equities weighs in favor of granting the injunction.[2] *Id.* at 612.

### C. *The Statute of Frauds.*

■ Durkin claims that there was an oral partnership agreement between Durkin and Saenger in the "manuals business" which superseded the written certification of the copyrights and that the Massachusetts Statute of Frauds (and its exceptions) is somehow applicable to that agreement. This oral agreement established that Durkin would have "equal rights in the copyright and the revenues to be derived therefrom." According to Durkin, this agreement is excepted from any writing requirement under the Massachusetts Statute of Frauds because: a) it is performable within one year; and b) the doctrine of equitable estoppel applies. In response, TSO contends that such an agreement is governed exclusively by Federal law, namely, 17 U.S.C. § 204(a), the terms of which are unequivocal:

> A transfer of copyright ownership other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

Congress expressly revised the Copyright Act in order to require a written transfer of copyright ownership in order to assure predictability and certainty of ownership.

Since Durkin agrees that the alleged partnership agreement was never memorialized in writing, the chances that the defendant will succeed on an oral agreement are slim. *Pamfiloff v. Giant Records, Inc.*, 794 F.Supp. 933, 937 (N.D.Cal.1992). According to the court in *Pamfiloff v. Giant Records, Inc.*, § 204(a) requires a writing which (1) identifies the subject matter of the agreement (2) indicates the parties that have come to that agreement, and (3) states with reasonable certainty the essential terms of the agreement. In this case, there is no writing, much less any indication that the parties came to an agreement which transferred or conveyed the rights to the texts.[3]

■ Accordingly, TSO has demonstrated a likelihood of success on the merits.[4]

### III. *CONCLUSION:*

In conclusion, I find:

1. That plaintiff Saenger is likely to succeed on the merits of its claim of copyright infringement;

2. That plaintiff Saenger has suffered and will continue to suffer irreparable injury if

---

2. In opposition to the injunction, the defendant merely states "the balance of the hardship is clearly upon the true author, Durkin, who was never dealt with in good faith by TSO or Saenger." Defendants' Memorandum of Opposition to Plaintiff's Motion for Preliminary Injunction, p. 6. The plaintiff alleges irreparable harm to its business reputation and goodwill. Memorandum in Support of Motion of Plaintiff, p. 10.

3. In fact, if this Court were to choose to follow the Northern District of California and its decision in *Pamfiloff*, even a written document memorializing the agreement between TSO and Durkin to equally share royalty payments would not be sufficient to satisfy the requirement of Section 204(a). *Pamfiloff* 794 F.Supp. at 936. In *Pamfiloff*, the plaintiffs attempted to rely on a document which sets out the distribution of roy-

alty payments for a sound recording in order to establish entitlement to a copyright. The court rejected the claim saying that such a document "will not satisfy the requirements of Section 204(a)" because it would not state with certainty the essential terms of the transfer or conveyance agreement. *Id.* at 936.

The court in *Pamfiloff* held that since § 204(a) is analogous to a statute of frauds, it was appropriate to superimpose the requirements necessary to satisfy the statute of frauds to determine if a document also satisfies § 204(a).

4. This action is governed by the Federal Copyright Act which specifically preempts the application of state law. *See,* 17 U.S.C. § 301; *Data General Corp. v. Grumman Systems,* 36 F.3d 1147, 1164 (1st Cir.1994).

the preliminary injunctive relief prayed for against the defendants is not granted;

3. That the harm plaintiff Saenger will suffer outweighs any harm which granting the requested preliminary injunctive relief will cause the defendant; and,

4. That the public interest will not be adversely affected by granting the requested preliminary injunctive relief.

**Therefore, preliminary injunctive relief is GRANTED. It is ORDERED that:**

Pending an adjudication on the merits of plaintiff Saenger's claims or further order of this Court after notice and hearing, Nationwide, Commonwealth and Durkin, their agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with them, or others by contract or agreement, are enjoined from offering, providing, printing, distributing, selling or in any way making available to the public including but not limited to any of Saenger's present or potential clients any of the training manuals or licensing texts for any state which infringe Saenger's rights which the defendants may now be publishing and specifically the manuals entitled *Fundamentals of Life, Accident and Health* and *Property/Casualty Licensing Text.*