John FORASTÉ, Plaintiff,

v.

BROWN UNIVERSITY and Laura Freid, Defendants.

No. 01–434S.

United States District Court, D. Rhode Island.

Oct. 30, 2003.

See also 248 F.Supp.2d 71.

---

Steven M. Richard, Jerry Cohen, Tillinghast, Licht, Perkins, Smith & Cohen, LLP, Yolanda M. Johnson, Beverly E. Ledbetter, Providence, RI, for defendants.

## DECISION AND ORDER

SMITH, District Judge.

This is the latest stage in an action concerning ownership rights to photographs taken by Plaintiff John Forasté ("Plaintiff" or "Forasté") while in the employ of Defendant Brown University ("Brown"). Forasté has alleged that he owns the copyright to these photographs pursuant to a copyright policy instituted at Brown during his years of employment.

In his Amended Complaint,[1] Forasté alleges two different theories of copyright infringement under the Copyright Act of 1976 ("1976 Act"), the first based on the express agreement exception to the work made for hire doctrine (17 U.S.C. § 201(b)), and the second on transfer of copyright interest (17 U.S.C. §§ 201(d)(1) and 204(a)). Those counts of the Complaint based on the former theory (Counts I and III) were disposed of by summary judgment on March 7, 2003. *See Foraste v. Brown University*, 248 F.Supp.2d 71 (D.R.I.2003) ("*Foraste I* ").

Presently before the Court is Defendants' Motion for Summary Judgment with respect to Count II of Plaintiff's Amended Complaint. For the reasons that follow, the Court finds that summary judgment is appropriate.

### I. *Background and Posture*

This Court's decision in *Foraste I* provides a comprehensive account of the history and travel of this case, including descriptions of Plaintiff's original and Amended Complaints, claims derivative of

Alden C. Harrington, Boyajian, Harrington & Richardson, Providence, RI, for plaintiff.

---

1. Plaintiff's original Complaint was amended    by leave of this Court on March 7, 2003.

Plaintiff's copyright infringement claims that did not survive, and Defendants' unsuccessful Motion to Dismiss for Lack of Subject Matter Jurisdiction. The Court need not re-state all of the facts undergirding that decision; however, a factual précis may be helpful to put the instant motion in context.[2]

Forasté was employed by Brown as a full-time staff photographer from February 1975 to September 1998, when his employment was terminated due to a staff cutback. He was an employee-at-will, and had never signed an employment contract. He took pictures at the request of editors, art designers and other Brown personnel, as well as on his own initiative. His photographs were used in Brown publications and by various Brown departments to convey a positive image of Brown to the public.

In 1986, Brown adopted certain "Policies and Procedures Relating to Copyright" (the "Policy"). The Policy applies when an employee creates "copyrightable materials under University auspices or using University facilities" and is administered by Brown's Dean of Research. It appears in two other Brown handbooks, one entitled "Faculty Rules and Regulations" and the other "Staff Information Guide, You & Brown."

Of special significance to the instant motion is the following provision of the Policy:

3. *Ownership:* It is the University's position that, as a general premise, ownership of copyrightable property which results from performance of one's University duties and activities will belong to the author or originator. This applies to books, art works, software, etc.[3]

There is *no other writing in evidence* that arguably could represent an agreement between the parties as to ownership of the images that Forasté created.

## II. *Standard of Review*

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, this Court must review the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir.2002); *Mesnick v. General Electric Co.,* 950 F.2d 816, 820 (1st Cir. 1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

To oppose the motion successfully, the non-moving party "may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, in order to defeat a properly supported motion for summary judgment, the non-moving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

## III. *Analysis*

Plaintiff's sole remaining claim of copyright infringement is based on an allega-

---

2. These facts are undisputed.

3. Certain exceptions exist which are not relevant here.

tion that Brown transferred its copyright interest in the photographs to Forasté, pursuant to sections 201(d) and 204(a) of the 1976 Act. In order to determine whether Plaintiff can prevail on this theory, it is necessary to set forth the three statutory provisions in play:

§ 201. **Ownership of copyright**

. . . .

(b) **Works Made for Hire.**—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

. . . .

(d) **Transfer of Ownership.**—

(1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

§ 204. **Execution of transfers of copyright ownership**

(a) A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C §§ 201(b), 201(d)(1), and 204(a).

A. *Construing the Provisions*

■ Defendants' first argument supporting summary disposition is one of statutory construction. They claim that sections 201(d)(1) and 204(a) cannot effectuate a transfer of copyright interest in any of the photographs because the allocation of copyright interests in works made for hire is governed exclusively by section 201(b). Furthermore, section 201(b) controls in Defendants' view because its language refers specifically to works made for hire, whereas the language of sections 201(d)(1) and 204(a) does not. *See generally Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 489–490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973) for the principle that a more specific statute will be given precedence over a more general one). Defendants submit that the "unless" clause of section 201(b) modifies the verb "owns," thereby creating a presumption of employer ownership that cannot be rebutted by means of a transfer under sections 201(d)(1) and 204(a). Since the Court has already determined that the photographs are works made for hire, *see Foraste I,* 248 F.Supp.2d at 80–81, Defendants conclude that to permit the alleged transfer would effectively nullify the "unless" clause requirements of section 201(b).

Plaintiff counters that section 201(b) allows for transfers altering the allocation of ownership rights between employers and employees, and that the alleged transfer does not vitiate the explicit allocation set out by section 201(b) because employers' authorship rights remain intact throughout such transfers. The argument is premised on a distinction between "authorship" and "ownership"—Plaintiff contends that section 201(b) relates only to the former and not the latter.

It is undisputed that the Court confronts an ambiguity in the operation of these provisions, because there are two seemingly inconsistent sets of requirements to effectuate a transfer. Either section 201(b)'s "unless" clause is the exclusive means of transferring copyright ownership of a work made for hire, or the relatively relaxed standards of section 204(a)—"an instrument of conveyance, or a note or

memorandum of the transfer" signed by the transferor—permit the transfer of copyright ownership of a work made for hire from employer to employee notwithstanding the "unless" clause. Since text alone cannot resolve the ambiguity, the Court must make use of the pertinent legislative history for further guidance. *See Barnhill v. Johnson,* 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (appeals to legislative history are well taken only to resolve statutory ambiguity); *Laaman v. Warden, New Hampshire State Prison,* 238 F.3d 14, 16 (1st Cir.2001) ("we ... only resort[ ] to legislative history or other aids of statutory construction in the case of ambiguity or an unreasonable result") (citations omitted).

Congress, in designing section 201(b), undoubtedly intended to protect employers' proprietary rights in works made for hire. *See* H.R.Rep. No. 94–1476 at 121 (1976), U.S.Code Cong. & Admin.News 1976, 5659, 5736 ("any agreement under which the employee is to own rights [must] be in writing and signed by the parties"). Indeed, the drafters of section 201(b) explicitly declined to incorporate language that would have vested partial ownership rights in creators. In excluding the so-called "shop right" doctrine, the drafters reasoned that

> [t]he presumption that initial ownership rights vest in the employer for hire is well established in American copyright law, and to exchange that for the uncertainties of the shop right doctrine would not only be of dubious value to employers and employees alike, but might also reopen a number of other issues.

*Id.* The drafters' emphasis on an employer's "ownership rights" and avoiding "other issues," as well as the glaring absence of reference to any "value" distinct from ownership (e.g., the value associated with authorship) severely undercuts Plaintiff's argument based on any alleged authorship/ownership dichotomy contemplated in section 201(b).

Moreover, the predecessor of the 1976 Act, the Copyright Act of 1909 ("1909 Act"), clarifies that authorship and ownership of works made for hire were both intended to vest, as an initial matter, in the employer. The work made for hire provision of the 1909 Act was simple: "the word 'author' shall include an employer in the case of works made for hire." 17 U.S.C. § 26 (current version at 17 U.S.C. § 201(b)).

The implication of this unqualified designation of employers as authors was elaborated upon by the Court of Appeals for the Second Circuit:

> an employer and an employee [are not] precluded as a matter of law from agreeing that the copyright in the resulting work shall vest in the employee. *See, generally,* Nimmer, Copyright § 62.1 (1968). Rather, § 26 merely creates a rebuttable presumption of copyright in the employer, a presumption which can be overcome by evidence of a contrary agreement between the parties.

*Scherr v. Universal Match Corp.,* 417 F.2d 497, 500 (2nd Cir.1969) (all other citations omitted).

The 1976 Act codified the explanation of section 26 provided in *Scherr,* explicitly permitting agreements altering the ownership scheme from that under section 201(b) by adding the "unless" clause. In so doing, however, the 1976 Act preserved from the 1909 Act its unalterable designation of employers as authors. "Under section 201(b) of the current Act, the parties may agree that the employee rather than the employer 'owns all rights comprised in the copyright,' but the proviso that 'the employer or other person for whom the work was prepared is considered the author for purposes of this title' is not subject to

variation by agreement between the parties." Nimmer, Copyright § 1.06[C] (2003) (quoting 17 U.S.C. § 201(b)).

■ The legislative history of section 201(b) therefore demonstrates that, contrary to Plaintiff's contentions, its drafters intended to safeguard employers' "authorship" *and* "ownership" rights.[4] It would defy that intention to accept the claim that an employer could transfer copyright ownership in a work made for hire to an employee without complying with the strict requirements of section 201(b)'s "unless" clause.[5]

### B. *Section 204(a)*

■ Even assuming, however, that the Plaintiff could circumvent the "unless" clause, and that one could transfer a work made for hire without adhering to section 201(b), there remains the question of whether what occurred in this case constitutes a valid transfer pursuant to section 204(a). As set forth above, the statute itself only requires a written "instrument of conveyance, or a note or memorandum of the transfer" that is "signed by the owner of the rights conveyed or such owner's duly authorized agent."

Judge Kozinski of the Ninth Circuit has explored the purposes underlying the requirements of section 204(a) in some detail. In *Effects Assocs., Inc. v. Cohen,* he listed several reasons for the section 204(a) writing requirement, which include: spelling out the terms of the deal to prevent misunderstandings; forcing the parties to clarify their thinking and consider problems that could potentially arise; and determining precisely which rights are to be transferred. 908 F.2d 555, 557 (9th Cir.1990), *cert. denied sub nom. Danforth v. Cohen,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). The Policy, when measured against these criteria, is too vague to fulfill any of them. It spells out no material terms specific to the contested photographs; in fact, it does not even mention the subject matter of the transfer. The Policy also gives no indication that the parties had clarified their thinking (indeed, that there was any "thinking" about copyright in the photographs at all) or considered any problems that could potentially arise. Forasté himself acknowledges that

---

**4.** *See, e.g., Baltimore Orioles v. Major League Baseball Players Ass'n,* 805 F.2d 663, 667 (7th Cir.1986) ("[A]n employer *owns* a copyright in a work if (1) the work satisfies the generally applicable requirements for copyrightability set forth in 17 U.S.C. § 102(a), (2) the work was prepared by an employee, (3) the work was prepared within the scope of the employee's employment, *and (4) the parties have not expressly agreed otherwise in a signed, written instrument.*") (emphasis supplied).

**5.** The Court notes that the traditional "faculty exception" to the work made for hire doctrine, "whereby academic writing [is] presumed not to be work made for hire," *see Hays v. Sony Corp. of America,* 847 F.2d 412, 416 (7th Cir.1988), is inapposite here. That exception is meant to protect the "scholarly articles and other intellectual property" created by university professors while in the employ of an academic institution. *Weinstein v.*

University of Illinois, 811 F.2d 1091, 1094 (7th Cir.1987). Various equitable considerations often mandate that a scholar retain the copyrights in his work, notwithstanding the work made for hire doctrine. *See, e.g., id.* at 1094–95 (for example, the requirement that a scholar "publish or perish"); *Hays,* 847 F.2d at 416 ("A college or university does not supervise its faculty in the preparation of academic books and articles, and is poorly equipped to exploit their writings, whether through publication or otherwise; we may set to one side cases where a school directs a teacher to prepare teaching materials and then directs its other teachers to use the materials too."). These equitable policy concepts do not apply here because Forasté was not working under an implicit or explicit "publish or perish" directive, and because he was usually directed by Brown officials to photograph specific scenes.

he did not even contemplate ownership of the photographs until well after the Policy's adoption, and it would be absurd and unsupportable to suppose that Brown had Forasté's photographs in mind when it enacted the Policy. Lastly, the Policy shows an utter absence of precision regarding the rights to be transferred, again for the reason that the photographs are nowhere mentioned, nor are there any details of the purported deal.

In *Konigsberg Int'l, Inc. v. Rice,* Judge Kozinski hinted at a "meeting of the minds" requirement, intimating that a valid section 204(a) writing should be the product of the parties' negotiations. 16 F.3d 355, 357 (9th Cir.1994). In this case, there is no evidence of a negotiation or "meeting of the minds" between Forasté and Brown regarding the contested photographs. There is no indication that Forasté ever bargained for the copyrights he now seeks, for example. Indeed, it would be impossible for the Policy to have been the product of a "meeting of the minds" between Brown and Forasté, since Forasté never even thought about copyright ownership until after his termination.

Judge Gertner of the District of Massachusetts has cited approvingly a rigorous standard for section 204(a) transfers. *See Saenger Organization, Inc. v. Nationwide Ins. Lic. Assocs., Inc.,* 864 F.Supp. 246, 250 (D.Mass.1994) (citing *Pamfiloff v. Giant Records, Inc.,* 794 F.Supp. 933, 937 (N.D.Cal.1992)), *aff'd,* 119 F.3d 55 (1st Cir. 1997).[6] The *Pamfiloff* criteria for a section 204(a) transfer include: (1) identification of the subject matter of the agree-

ment; (2) an indication that the parties have come to that agreement; and (3) a reasonably certain statement of the essential terms of the agreement. *Id.* The Policy does not meet even a single one of these three conditions.

While the approaches of Judges Kozinski and Gertner toward section 204(a) are not universally accepted,[7] the requirement that the instrument of transfer be "clear" finds frequent emphasis in other section 204(a) decisions. At least one circuit court has held that a valid section 204(a) transfer instrument must be explicit, *see Saxon v. Blann,* 968 F.2d 676, 680 (8th Cir.1992), and many courts have stated that, to be valid, a section 204(a) writing must be clear. *See Bieg v. Hovnanian Enters., Inc.,* 157 F.Supp.2d 475, 480 (E.D.Pa.2001); *Tasini v. New York Times Co.,* 972 F.Supp. 804, 810 (S.D.N.Y.1997), *rev'd on other grounds,* 206 F.3d 161 (2nd Cir. 2000); *Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1159 (S.D.N.Y. 1996). *Accord Danielson, Inc. v. Winchester–Conant Properties, Inc.,* 186 F.Supp.2d 1, 11 (D.Mass.2002) (finding that an agreement satisfied section 204(a) that "unequivocally" identified the owner and described the extent of the owner's rights), *aff'd on other grounds,* 322 F.3d 26 (1st Cir.2003).

The Court finds it significant that the Policy fails to make any reference at all to the subject matter of the rights to be transferred, the recipient of the transferred rights, the timing of the transfer, or any other particulars of the deal. *Cf. Radio Television Espanola S.A. v. New World Entertainment, Ltd.,* 183 F.3d 922,

---

6. The standard for a valid section 204(a) transfer was not discussed by the First Circuit.

7. For example, not every court requires that a valid section 204(a) transfer instrument name the transferee, *see, e.g., Sunham Home Fashions, LLC v. Pem–America, Inc.,* No. 02 Civ.

6284(JFK), 2002 WL 31834477, *7 (S.D.N.Y. Dec.17, 2002), nor that the parties negotiate the terms of the transfer. *See, e.g., Zyware, Inc. v. Middlegate, Inc.,* No. 96 Civ. 2348(SHS), 1997 WL 685336, *4 (S.D.N.Y. Nov.4, 1997).

927 (9th Cir.1999) ("A mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of § 204(a)."); *ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 322 F.3d 928, 938 (7th Cir.2003) (Ripple, J., concurring) ("To state on summary judgment that an agreement that says nothing about copyrights or intellectual property rights—or even mentions the underlying property—probably transferred a copyright conflicts with the purposes of section 204[.]").

This Court finds that the Policy fails as a section 204(a) transfer instrument. Not a single relevant detail of the purported transfer is stated in the Policy. To infer from the Policy's language a transfer of copyright ownership in the photographs would contravene the very purpose of section 204(a): to "enhance[ ] predictability and certainty of copyright ownership— 'Congress' paramount goal' when it revised the Act in 1976." *Effects Assocs.,* 908 F.2d at 557 (citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 749– 750, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)).

IV. *Conclusion*

For the foregoing reasons, the Court orders that Defendants' Motion for Summary Judgment as to Count II of the Amended Complaint be GRANTED.

SO ORDERED.